in the will by which E. (the survivor) can be held to take by implication."

In Scott v. Bargeman, cited in the foregoing opinion, and also relied upon by the Auditing Judge below, the interests were held to be contingent, and for that reason cross-remainders were implied. The principal criticism which has been made upon that case is that the interests should have been held to be vested, and not contingent. It does not appear, however, to conflict with the rule laid down by Mr. Theobald.

Our own cases of Chew's Appeal, 1 Wright, 23, and McKee's Appeal, 15 Norris, 277, are believed to be in accord with the foregoing views. That the English cases are not all harmonious or consistent may be admitted, but the leaning of the later cases then as well as now, has been to favor the vesting of interests wherever there are reasonable grounds for such construction.

The court below attached much weight to what they believed to be the intent of the testator, and their ruling was evidently designed to carry it into effect. If that intent had been clearly expressed it would govern this case. It is not, however, expressed at all, and is only a matter of inference. It is possible their view as to the testator's intent may be the correct one, and that Mrs. Allen never intended her husband to have more than a life interest in this third of her estate. It is more probable, however, that the contingency of his inheriting from his children never occurred to her or the draftsman of the will. It often happens that by the death of persons to whom a vested interest has been given, the property passes to some one not contemplated by the testator. It may be so here, but the intent of the testatrix is not so evident as to override what we regard as the settled law as to the vesting of a bequest under the will.

> The decree is reversed in each estate at the costs of the appellees, and it is ordered that distribution be made in accordance with the views as expressed in this opinion.

# Appeal of Vaux, Executor.

109　497
110　619
109　　　497
28 SC　194
109　　　497
29 SC　423

1. Under the Act of April 29th, 1874, (P. L. 73), the approval of a charter is a matter in the discretion of the Common Pleas, and no appeal lies from their decision. A certiorari will, however, lie to review the proceedings so far as to see whether they are in accordance with the Act of Assembly.

2. Where the object of a proposed corporation is to carry out the pro-

visions of a will, it is the duty of the court, before which the charter is brought for approval, to examine the will to see if the organization and object of the same is in harmony with the provisions of the will.

3. A testatrix by her will devised and bequeathed her whole residuary estate, which was very large. to establish an industrial home for orphan girls, particularly the children of soldiers and firemen, and directed that such girls should be instructed in domestic and industrial duties, such as would fit them for employment in stores, or for seamstresses or domestics, or for any analogous occupations. She further directed her executor to procure a charter for the institution, and named four ladies as corporators, together with such other persons as might be named by her executor. Upon the death of testatrix two of said ladies were found to have died before her, and one of the remaining two only was willing to sign the charter which the executor caused to be prepared. The other proposed corporators were all men, thirteen in number. The proposed charter set forth the purposes of the institution, as specified in the will of testatrix, with this addition : "It being intended, however, that the primary object of the Home shall be the fitting and training of such orphan girls as nurses." Said proposed charter further declared that the other lady named by the testatrix should be eligible for election at any time, but all vacancies thereafter occurring were to be filled by men only. Provision was also made for an advisory board of fifteen ladies, under the control of the board of directors, and to be elected by them. Application being made to the court to grant the charter as above, and the application being refused, and a certiorari taken :

*Held*, that the proposed charter was inconsistent with the intention of the testatrix, both as to the purposes of the charity, and also because the control of the corporation was not given, in part at least, to females, and that the court was therefore warranted in refusing the application.

April 10th, 1885. Before. MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN J., absent.

APPEAL from a decree of the Court of Common Pleas No. 3, of *Philadelphia county*, refusing to approve the charter of the "Foulke and Long Institute for Orphan Girls." Of January Term 1885, No. 202.

The facts were as follows : By her last will and testament Eleanor P. Long, who left a residuary estate amounting to nearly a quarter of a million of dollars, did devise and bequeath the same as follows :—

"*Tenthly*, Inasmuch as it was the wish of my mother that the principal part of the property she devised and bequeathed to me, should be devoted, after my death, to a public charity, and as I have always cherished the strongest feelings of gratitude for her parental affection, and feeling it my duty to carry out her wishes, and at the same time to raise a monument to her memory and that of my sister Mary—therefore I give, devise, and bequeath all the rest, residue, and remainder of my estate, real and personal, to ·my executors hereinafter named and the survivor of them, and the heirs, executors,

administrators, and assigns of such survivor, in trust, for the following uses, intents, and purposes, namely, to establish an industrial home for orphan girls of the city of Philadelphia, especially for the orphan children of soldiers who served in the late civil war in the defence of their country, and for the orphan children of firemen of the said city, whose lives have been sacrificed for the public benefit and the discharge of their duties. And to carry this purpose into effect I direct my said executors, or the survivor of them, to apply for and obtain a charter of incorporation for such charity, either from the legislature of the state or from any court having jurisdiction in the premises, at their discretion, the name and style of which corporation shall be 'The Foulke and Long Institute for Orphan Girls,' the terms and provisions of which charter are to be made and declared by my said executors or the survivor of them according to their best ability and discretion, regard being had to the objects of the charity, which are : that the said orphan children shall be maintained, clothed, and well educated and instructed in domestic and industrial duties, such as will fit them for employment in stores, or for seamstresses or domestics, or for any analogous occupations. The number and qualification of the inmates, and the term of their remaining in the institution, are to be decided by the managers of the corporation.

"It is my wish that my friends, Miss Louisa Erwin (Arch below Twelfth Street), Mrs. Debby Cresswell, Miss Mary Logan, and Miss Rebecca Stroud, should be corporators, with such other persons as may be chosen by my said executors or the survivor of them, and may be willing to serve in that capacity. And upon the death, removal, or resignation of any of the corporators, it is my will that the vacancy shall be filled by the remaining corporators, or at their discretion by the Chief Justice of the Supreme Court of the State of Pennsylvania. And upon such charter of incorporation being obtained I direct my said executors or the survivor of them, as the case may be, to grant, convey, and assign to the said corporation all my said residuary real and personal estate whatsoever, to have and to hold the same, to the said corporation, their successors and assigns for ever, for the said charitable purposes.

"It is my wish that the house I now occupy at the southeast corner of Arch and Twelfth streets (No. 1134 Arch street) shall be used for the purposes of the charity for at least three or four years after my decease, when, if the managers shall think fit, the same may be sold and the proceeds applied to the erection of a more suitable house and lot. If necessary for such purpose a part of the principal of my said other resi-

duary estate may be so employed—otherwise it is my will that
the capital shall remain securely invested, and the income
only shall be applied to the support of the said charity.

"*Eleventhly.* In case from any reason whatever, legal or
otherwise, the foregoing devise and bequest of my residuary
real and personal estate should be declared to be inoperative
and void, or in any way contrary to law, then and in such
case only, and immediately upon any such decree or decision,
I give, devise, and bequeath my said residuary estate, real and
personal, whatsoever, to my said executors and the survivor
of them, and the heirs, executors, administrators, and assigns
of such survivor, in fee and absolutely for their own proper
use. benefit, and behoof."

William S. Vaux, one of the executors named in her will.
died before her. Letters testamentary were granted to the
surviving executor, George Vaux. In pursuance, as he sup-
posed, of the powers vested in him, he caused a charter to be
prepared, which was signed by Mrs. Debby Cresswell, one of
the four persons named in the said will. Miss Rebecca
Stroud refused to sign it. Her name was not therefore
included as a corporator; but provision was made for her
election at a later period should she so desire. The other
persons named by the testatrix are dead. The charter was
also signed by the corporators named by the executor, viz.,
William Pepper, M. D., John Welsh, Wm. Bacon Stevens,
William Sellers, Eli K. Price, Richard Wood, Charles C. Har-
rison, William Hunt, Samuel Dickson, George Whitney,
Jesse Y. Burk, James Tyson, M. D., and Wharton Barker.

Article II. of the proposed charter provided as follows:—

"This association has been made under the direction of
George Vaux, executor of Eleanor P. Long, and the purpose
for which the corporation is formed is to receive and admin-
ister the charity directed to be founded by the will of the said
Eleanor P. Long, by establishing and maintaining, with her
said residuary estate, and with such other property as may be
acquired, an industrial home for orphan girls of the city
of Philadelphia, especially for the orphan children of soldiers
who served in the late civil war in the defence of their coun-
try, and for the orphan children of firemen of the said city
whose lives had been, or may be, sacrificed for the public
benefit and in the discharge of their duties, in which Home
said orphan girls may be maintained, clothed, well educated,
and instructed in the duty and occupation of nurse, and in
such other domestic and industrial duties as will fit them for
employment in stores, or for seamstresses or domestics, or for
any analogous occupations; it being intended, however, that

the primary object of the Home shall be the fitting and train-ing of such orphan girls as nurses."

By said proposed charter it was provided that the number of corporators should always be fifteen, and that vacancies should be filled—"at any future time with males only, and shall be filled, as they occur, by the remaining corporators, it being intended that Rebecca Stroud may be eligible for elec-tion. In case of unreasonable delay in thus filling such vacancies, the same shall be filled, upon the application of any ten citizens of this Commonwealth, by the person who, at the time of such application, shall occupy the office of Chief Justice of the Supreme Court of Pennsylvania."

It provided for an advisory board of not less than fifteen females, to be elected annually, whose duties, under the con-trol, rules, and regulations of the board of directors, shall be "to conduct and superintend the practical operations of the Institute."

All the formalities of the law, as to advertisement and otherwise, were complied with, and said charter was duly pre-sented to the judges of the Court of Common Pleas No. 3, for their approval. They sustained certain exceptions to the same which had been filed by Miss Stroud, and refused to approve the charter unless it was modified by striking out the words "it being intended, however, that the primary object of the home shall be the fitting and training of such orphan girls as nurses;" and by striking out, in the provisions for supplying corporators, the words, "vacancies shall be filled at any future time with males only."

George Vaux, executor, thereupon took this appeal.

He also subsequently took out a writ of certiorari, assigning for error the refusal of the court to grant the proposed charter.

*John G. Johnson*, for the appellant.

[MERCUR, C. J. Mr. Johnson, where do you get your right to an appeal in this case?]

The language of the Act declares that the court shall ap-prove the charter, if its purpose be lawful. It is not a judi-cial discretion, but a duty, and is therefore reviewable here. It was the duty of the court below to approve the charter presented, because its purposes were lawful. It had no juris-diction to determine whether or not the corporation, when created, would be entitled to receive the residuary estate of Eleanor P. Long, that is a question for the Orphans' Court. The terms of the charter were in accordance with the pro-visions of the said will, the court had no right to disapprove the charter, when the executor used his discretion and deter-mined that it would be better to have the finances of the

home in the hands of capable men, leaving the practical management of the home to an advisory board of females.

*Lewis D. Vail*, for appellee.—The approval of a charter is a matter of discretion in the Common Pleas. This court has decided that it will not grant charters under the Act of 1874: In re Tara Benevolent Society, 9 Phila., 287. The proposed charter declared that the object of the association was to administer the charity directed to be founded under the will of Eleanor P. Long, consequently the court had a right to examine this instrument, and they properly decided that to establish a "training school for nurses" with men as the responsible directors of the same was not carrying out the intention of the will.

Mr. Justice PAXSON delivered the opinion of the court, May 25th, 1885.

This is an appeal from the refusal of the court below to approve a charter of incorporation. We are satisfied no appeal lies in such case. It is not given by any Act of Assembly.

There was also a certiorari taken out and this brings up the record, and we can review it so far as to see that the proceedings below are in accordance with the Act of Assembly. Under the Act of 1874 the approval of a charter is in the discretion of the court below. This charter evidently comes under the first class, and as to such charters the Act provides that they "shall be presented to a law judge of the said county, accompanied by proof of the publication of the notice of such application, who is hereby required to peruse and examine said instrument, and if the same shall be in the proper form, and within the purposes named in the first class specified in the foregoing section, and shall appear lawful and not injurious to the community, he shall indorse thereon these facts, and shall order and decree thereon that the charter is approved," &c. Thus it appears that the judge to whom the charter is presented must be satisfied that all the requirements of the Acts have been complied with, and also that the purpose of the corporation "shall appear lawful and not injurious to the community." This is certainly committing the approval of the charter to the legal sound discretion of the judge below. If such discretion is abused, not otherwise, we can review it upon certiorari.

We have no doubt it is lawful to organize a corporation for the "fitting and training of orphan girls as nurses," and had this been all, the court below would doubtless have approved it. Such an institution would have come within the first class as a benevolent and charitable association. But the very foundation of this charter, as the application shows, is the will

of Eleanor P. Long, and it is to carry out the charitable objects of said will that said charter was prepared and presented to the court below. It is very clear that without this essential element the charter would possess no value, and the corporation could not take possession of the estate of Eleanor P. Long, and execute the trusts contained in her will. It was therefore the plain duty of the court below to examine the will to see if the charter was in accordance therewith. If it is not, if its organization and object are not in harmony with the will ; if an attempt is being made to engraft upon this will a trust different in form and substance from that specified in it, then it was plainly an unlawful charter, and the learned judge below exercised a sound discretion in rejecting it.

Our only difficulty in reviewing this branch of the case is that the will does not come up with the writ of certiorari. There was no copy of the will attached to the charter as there ought to have been. We have however, the opinion of the court below, in which the facts sufficiently appear, and it is the duty of the court, where a charter is approved to indorse thereon that its object is lawful, &c. It would seem to be equally clear that when a charter is not approved the reasons therefor should also be indorsed, and thus becomes a part of the record.

We are all of opinion that the charter does not conform to the will. The trust set forth in the latter instrument is " to establish an industrial home for orphan girls in the city of Philadelphia, especially for the orphan children of soldiers who served in the late civil war in the defence of their country, and for the orphan children of firemen of the said city whose lives have been sacrificed for the public benefit and in the discharge of their duties." The objects of the said charity, as more particularly stated by the testatrix are : " that the said orphan children shall be maintained, clothed and well educated and instructed in domestic and industrial duties, such as will fit them for employment in stores, or for seamstresses or domestics, or for any analagous occupations."

The charter recites the foregoing provision of the will, but follows such recital with the words: " It being intended, however, that the primary object of the Home shall be the fitting and training of such orphan girls as nurses."

The charity indicated by the testatrix is a broad and noble one, and with the large fund appropriated by her for its support, is a munificent one. The charity designated in the charter is commendable, but is not what the testatrix intended. A home for orphan children, where they shall be maintained, clothed and educated in order to qualify them to earn their living in stores, as seamstresses or as domestics when they

reach a suitable age, is one thing; a training school for nurses is another and very different matter. Children are not trained as nurses; the duties of such a position are learned later in life. The manifest object of the charter is to limit the application of the testatrix's charity to this one purpose. It is obvious that this was not intended by her; and it is more than doubtful if she contemplated it as one of the objects of her bounty.

We also fully indorse what was said by the learned judge below upon another point. By the will the testatrix names four ladies as corporators, with such other persons as may be named by her executors. She evidently contemplated and intended that females should have control in part, at least, over the corporation. All of the corporators named in the charter save one, are males, and by its term all vacancies in the future are to be filled by males, save "that Rebecca Stroud may be eligible for election." It is true the charter provides for an "Advisory Board" of not less than fifteen females "who shall be subject in all cases to the control of the board of directors, and shall be elected by them." The charter gives them no control of any kind; they are mere figure heads. We need not discuss the wisdom of having the corporators, or at least a portion of them, females. Yet in a corporation founded and endowed by a female for the care of orphan children, it would not be difficult to find good reasons for such a provision and plenty of them. It is our duty to see that this noble charity is organized as its founder intended, and we are of opinion that the proposed charter does not carry out the scheme she had in view. We therefore approve the action of the learned and able judge of Common Pleas.

The appeal is quashed, and the order refusing to approve the charter is affirmed upon the certiorari.