## Curran Foundation Charter.

Argued May 21, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Owen J. Roberts* and *David B. Skillman,* with him *C. Russell Phillips,* for appellants.—The charter should be self-contained and should not incorporate by reference the will of William Curran: Vaux App., 109 Pa. 497; Garrett Williamson Lodge, 239 Pa. 474.

The charter is too indefinite, even including the will of William Curran as part of it: Right Worthy Grand Court of Ladies' Protestant Assn., 8 Pa. Dist. R. 127; Board of Real Est. Brokers, 21 Pa. Dist. R. 59; Xantha B. & L. Assn., 8 Pa. Dist. R. 142.

The Act of April 29, 1874, P. L. 73, as amended, does not authorize an impecunious corporation to supervise a charity financed from other sources.

The will of William Curran does not contemplate such a merely supervisory corporation.

274

*George Wharton Pepper* for appellees.—Apart from questions or form, appellees were within their rights in seeking this charter at this time.

The application is in proper form: Zeisweiss v. James, 63 Pa. 465; Garrett-Williamson Lodge, 239 Pa. 474.

A purpose sufficiently definite to sustain a charitable trust is likewise definite enough to serve as the statement of the purpose of the corporation formed to administer that trust. That the purpose disclosed by this will is sufficiently definite was settled by this court in Curran's App., 4 Penny. 331.

*J. F. Shrader,* of *Guckes, Shrader, Burtt & Thornton,* for Presbytery of Philadelphia, amicus curiæ.

*James L. Rankin,* of *Geary & Rankin,* for Synod of Pennsylvania, amicus curiæ.

Opinion by Mr. Justice Simpson, July 1, 1929:

These two appeals are from a decree incorporating "The Curran Foundation," the charter specifying that "the purpose for which the corporation is formed is to promote the cause of the higher christian education of women, in conformity with the principles declared in the will of William Curran, deceased, probated before the Register of Wills of Philadelphia, and recorded in Will Book 120, p. 399." The will referred to—which we presume is intended to include the four codicils probated with it—is not attached to the charter, or set forth in the proceedings leading up to it, though this would have been the better practice: Appeal of Vaux, Executor, 109 Pa. 497, 503; In re Garrett-Williamson Lodge, 239 Pa. 474, 477. A failure in this respect, however, is not a sufficient reason for reversing the decree of incorporation: In re Garrett-Williamson Lodge, supra.

Decedent's will, as above understood, covers more than eighteen printed pages. Upon the point now under consideration, it has not been construed by any court,

but the provisions regarding trusts and accumulations have been held immune from attack by the heirs and next of kin: Curran's Appeal, 4 Pennypacker 331. In this class of cases no right of appeal is given by statute; hence, "our inquiry is necessarily limited to questions relating to the proper exercise of the discretion exercised by the court below in granting the charter": In re Garrett-Williamson Lodge, supra, page 476; Appeal of Vaux, Executor, supra; In re Grand Lodge of Ancient Order of United Workmen, 110 Pa. 613. Where, as here, however, "the very foundation of the charter, as the application shows, is the will of [a testator], and it is to carry out the charitable objects of said will that said charter was prepared and presented to the court below ......[and] without this essential element the charter would possess no value,......it was the plain duty of the court below to examine the will to see if the charter was in accordance therewith. If it is not,......then it was plainly an unlawful charter," and should not have been granted: Appeal of Vaux, Executor, supra, pages 502, 503. Like circumstances exist here, thus compelling a reversal of the present decree of incorporation.

The twelve petitioners for this charter (hereinafter called petitioners) were appointed by the trustee under the will, by virtue of a provision of the third codicil. In it testator says: "I therefore cancel that part of my will which selects five directors of [a specified] college, to supervise the expenditure of the income of this foundation, and devolve that duty upon the Board of Directors of the new organization which is now to be created.......When the annual income of my estate reaches the sum of $30,000 [as it now has] my trustee shall select twelve persons from the eldership of the Presbyterian churches in the Synod of Philadelphia in connection with the General Assembly, who shall apply for such legislation as will give the college legal existence. I respectfully request the Synod of Philadelphia to have an oversight of the progress of this endowment.

From my personal experience of their value, I enjoin upon the Board of Directors of said college to require every pupil supported by this foundation to pass an examination in the Hebrew, Greek and Latin versions of the sacred scriptures." As the Constitution of the Commonwealth forbade special legislation for corporations when this codicil was executed on August 31, 1880, and that inhibition has existed at all times since then, this clause must be construed to mean that petitioners "shall apply for such [franchises under existing] legislation as will give the college legal existence."

Because of this codicil, petitioners say, "The testator may have intended that a 'foundation' should be incorporated to receive in perpetuity income from the trust company [named as trustee] and apply it strictly to the attainment of the testator's purpose. The appellees contend that this is in fact the method intended by testator," and hence they make the present application to have themselves incorporated as "The Curran Foundation." The will discloses no such intention, however. The word "foundation" is used a number of times, always meaning the principal of the trust estate. Thus, in the first codicil testator says "I hereby declare it to be my will *to create my estate a foundation*"; directs that "should *the capital of this foundation* be impaired......[the trustee is] to diminish the annual appropriation for female education so as to restore gradually the capital to the sum of $500,000"; that certain persons named by him "shall have control exclusively of *the income of the foundation*......[with] power to select beneficiaries of this *foundation*....... It is my will that *the entire income of the foundation,* as appropriated by my trustee, shall be expended exclusively upon females, either as professors in the institution or beneficiaries in the *foundation*......I commit the entire control of my estate to my trustee......in the exercise of a sound discretion, with a view to an early accumulation of the *capital sum of $500,000 as a foundation* for this educational enter-

prise." The third codicil, above quoted, directs "the expenditure of the *income of the foundation,*" and requires "every pupil supported by this *foundation*" to pass the rigid examinations stated. And in the fourth codicil testator says he "desires to increase the *foundation* in the college for the education of necessitous youth and [is] satisfied that no security in which these funds could be invested will pay better than [his] well chosen property."

Testator's meaning, as we have stated it, is also the usual meaning of the word. In Trustees of Dartmouth College v. Woodward, 4 Wheaton 518, 673, it is said, quoting from 1 Bl. Comm. 480: "In eleemosynary foundations, such as colleges and hospitals, where there is an endowment of lands, the law distinguishes and makes two species of foundation, the one fundatio incipiens, or the incorporation, in which sense the king is the general founder of all colleges and hospitals; the other fundatio perficiens, or the dotation of it, in which sense the first gift of the revenues is the foundation, and he who gives them is, in the law, the founder; and it is in this last sense we generally call a man the founder of a college or hospital." See, also, Seagrave's Appeal, 125 Pa. 362.

The "foundation" of the present estate, as its meaning is thus ascertained, is the principal fund, which is given to the trustee, upon an active trust, to invest and keep it invested, to collect the income therefrom and to pay it over, either mediately or immediately, to or for those who are to be the beneficiaries of testator's bounty. Petitioners, as appointees of the trustee, are not charged with any duty regarding either the principal or income, and incorporating them adds nothing to testator's purpose in providing for their appointment. In fact, the only reason therefor, as expressed in the third codicil, above quoted, is that they "shall apply for such legislation as will give the college legal existence," which is but vesting in them a duty imposed upon the trustee by the first codicil, "to resort to the proper authority to

cure defects; if need be to the legislature of the State," if "from any cause" it becomes necessary so to do "in executing my will in respect to female education."

We are not now concerned with an inquiry as to whether or not the testament, the amount of the estate, or any other cause, will require the income to be directly distributed by the trustee, or to be awarded to an existing "college," to a "new organization," or under the cy pres doctrine to some other institution which can best carry out testator's paramount intent, as nearly as it can be done. This matter will be determined, in the first instance, when the account of the executor and trustee is before the orphans' court. What we are now concerned with and decide, however, is that petitioners, as appointees of the trustee, are not specified, even though incorporated, to be the almoners of testator's bounty; and hence, since a preparation for so acting was the only object sought to be accomplished by the present charter, it has no legal purpose to support it.

The decree or the court below is reversed; the costs to be paid by the estate of testator.