## Curran's Estate.

Argued January 6, 1933. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Ralph B. Evans,* with him *David B. Skillman,* for appellant, Beaver College.

*Robert T. McCracken,* with him *C. Russell Phillips,* for appellant, Philadelphia School for Christian Workers.

*Boyd Lee Spahr,* of *Ballard, Spahr, Andrews & Ingersoll,* with him *Allen Hunter White,* for appellee, Wilson College.

*Thomas Stokes,* with him *George Wharton Pepper,* for appellee, Fidelity-Philadelphia Trust Company, trustee.

OPINION BY MR. CHIEF JUSTICE FRAZER, March 20, 1933:

These two appeals will be disposed of together. They are from a decree of the Orphans' Court of Philadelphia County awarding the income from the residuary estate of Dr. William Curran to Wilson College for the uses and trusts declared in his last will and codicils. Testator died in 1880, survived by his wife and three brothers but no children. Soon after his death, his brothers attacked the will on the ground that the trust established therein violated the rule against perpetuities; its validity, however, was sustained in Curran's Est., 4 Pennypacker 331 (1884). Further litigation concerning testator's estate arose in connection with the Curran Foun-

436

dation Charter, in which this court held (297 Pa. 272) that the committee of twelve persons appointed by the trustee from the eldership of the Presbyterian Church, in accordance with what the trustee believed to be its duty under the will, were "not specified, even though incorporated, to be the almoners of testator's bounty"; and consequently there was no legal purpose to support the charter: Curran Foundation Charter, supra, page 278.

Decedent's will was dated May 31, 1872. After making provision for his wife he left the residue of his estate to the Philadelphia Trust, Safe Deposit and Insurance Company, now the Fidelity-Philadelphia Trust Company, in trust for purposes designated therein. By paragraphs five to nine inclusive of the will he bequeathed the income of the trust estate for the maintenance of a normal school for women teachers. By the first codicil, dated April 30, 1877, testator revoked the provisions of his will relating to a normal school and established "a foundation, the annual income of which shall be used to promote the higher education of females, in an institution adapted to that purpose, which shall be located in the City of Philadelphia or adjacent to it." In the same codicil decedent also provided that his trustee should, in the exercise of a sound discretion, alter and improve his property, pay off all encumbrances "and accumulate additional capital until it shall yield annually thirty thousand dollars, when the accumulation shall cease." The trustee carefully and prudently managed the estate in such manner that by September, 1927, all encumbrances had been paid off, and the annual income was in excess of thirty thousand dollars. Three institutions notified the trustee of their intention to make application to the court to have the income awarded to them. They were: Philadelphia School for Christian Workers, Philadelphia; Beaver College for Women, located at Jenkintown, Pennsylvania; and Wilson College, located at Chambersburg, Pennsylvania. At the

audit of the trustee's account in the orphans' court, the hearing judge, because of his relationship to an officer of the trust company, declined to act when it became known that the trustee had held a hearing as to the merits of the three claimants, and favored an award to Wilson College. Thereafter, by agreement of all parties, Francis B. Biddle, Esq., was appointed auditor by the court to settle and adjust the account and report an appropriate decree for distribution of the income.

The auditor held a number of hearings, made personal visits to each of the institutions and filed a comprehensive report awarding the money to Beaver College. As a result of exceptions, the auditor filed a supplemental report modifying his former recommendations so far as concerned the manner in which the income from the estate should be expended. Exceptions having been again taken by Wilson College and the Philadelphia School for Christian Workers, the matter was recommitted to the auditor for the taking of further testimony: "(1) As will throw more light on the academic and financial status of Beaver College; (2) As to how the income might properly be used by either Beaver or Wilson College in carrying out the intent of the testator......; (3) As to any plan of awarding the income for a short period of years to the trustee to grant scholarships to the beneficiaries of the trust in either Beaver or Wilson College or any other college approved by the synod." After taking further testimony the auditor filed a second supplemental report on March 22, 1932, reaffirming the recommendations of his original report as modified.

The orphans' court, sitting in banc, heard argument on exceptions to the auditor's report, and after consideration, in an opinion by HENDERSON, J., entered a decree reversing the auditor's recommendations and awarding the net income in controversy to Wilson College. Without attempting to set up a complete scheme of administration, the opinion of the lower court directed that one

thousand dollars be used "to provide such books and literature as will foster a missionary spirit, and such as will illustrate the Bible, its antiquities, its connection with the progress of society." The language quoted was taken from the first codicil to testator's will. In that instrument the discretion as to the amount to be expended on books was given to five named directors of a projected Philadelphia Female College, but the efforts to establish the college having ended in failure, the authority given the directors was revoked in a subsequent codicil. Testator's intention to provide such literature for the institution ultimately chosen as the recipient of his benefactions clearly persists however. The decree of the orphans' court also provides for the salary of a professorship of ancient languages, to be known as the "Wiltberger Professorship," in memory of testator's wife. This item is contemplated in the provisions of the first and second codicils. With the exception of a fund of $5,000 to be retained by the trustee to award the income to Lafayette College, for an annual lecture course as provided in the third codicil, the balance of the income, save necessary expenses, was directed by the court to be used by Wilson College to pay the tuition and board and lodging of women of the following groups—preference being given to those from Philadelphia:

1st. Daughters of foreign missionaries.

2d. Daughters of ministers of the gospel.

3d. Daughters of those in the learned professions.

4th. Young women of talent and ability.

The case is now before us on the appeals of Beaver College and Philadelphia School for Christian Workers. The assignments of error do not raise objections to the mode of distribution directed by the orphans' court but merely the designation of Wilson College as the beneficiary. The problem presented for our consideration is which of the three claimants is the proper recipient of the income from the foundation set up by Dr. Curran.

The auditor's findings of fact, in so far as they affected his recommendations for distribution of income, were overruled by the court in banc, and reasons given for this action. In such case, upon appeal, it is our duty to fully and carefully examine these reasons, "together with the entire record, and determine whether the action of the court in banc is justified, keeping in mind the weight to which the original findings are entitled and also the reasons given for their overthrow": Belmont Laboratories v. Heist, 300 Pa. 542, 548; Pilling v. Moore, 306 Pa. 406, 410.

Our primary effort should be to ascertain, if possible, testator's intent regarding the disposition of the income from his foundation. This is not without difficulty, for the language of the testament is somewhat contradictory, and the various codicils, with their provisions for revoking portions of previous instruments, leave the whole in a rather confused state. Definite elements, however, stand out which clearly and undoubtedly represent the crux of Dr. Curran's wishes concerning his benevolent gift. The foundation he desired to establish was for the higher education of women along classical lines in an institution providing a deeply religious and cultural background. The first codicil states: "I would use the Bible as a sun around which the education of the beneficiaries of this foundation shall revolve. I esteem female piety as a necessity to the highest progress of society. It is my desire that these graduates should be qualified as teachers, and that every one of them should be able to read the sacred scriptures in the original languages. In matters nonessential to my great purpose, I permit a wide and sound discretion." In codicil No. 3, testator states: "As in the early years of my religious life, I deeply pondered the question of my duty to go as a missionary, I desire that what I do for this college shall remain as a monument of my ardent love for the cause of missions. I desire that the influence of this col-

lege should be to train up females who shall provide for themselves and bless the church of Christ."

The auditor, in making the award to Beaver College, arrived at his result by a process of elimination. He determined that the Philadelphia School for Christian Workers (now called Tennent College) was not a college and not exclusively a female institution, and that Wilson College, although fulfilling the requirements of the will in other respects, was not located in Philadelphia or adjacent to it. The court in banc concurred in the result as to the School for Christian Workers, but reversed on the ground that the location of the college was not a factor of prime importance and that Wilson more nearly satisfied the other and paramount requisites of the college contemplated by Dr. Curran. Concerning the matter of location, the intention of testator is expressed in the first codicil, in the paragraph setting up the foundation, in which he states that the institution "shall be located in the City of Philadelphia or adjacent to it." He also speaks of combining "the highest culture which our beautiful city can afford with consecration to the cause of Christ......," and in another place says "it is my will to devote all my means, after the decease of my dear wife, to the gratuitous education of young women in my beloved Philadelphia."

That Dr. Curran desired the college to be situated in Philadelphia if possible is apparent; that he did not regard its location there as mandatory appears from this provision: "But should no college for the education of females, in such manner as will satisfy the requirements of my will be available, in or adjacent to Philadelphia, when my said trustee shall be prepared to appropriate from the income of my estate in accordance with my will, then I authorize my said trustee to select from the sessions of the Presbyterian churches in Philadelphia five directors, who shall exercise all the powers and be subject to the restrictions which I have imposed in my will." (The Presbyterian Church, through a committee

of five persons appointed by the Synod of Pennsylvania, has taken a position of neutrality as to the choice of a beneficiary among the three claimants.) Inasmuch as testator realized that no college in or adjacent to Philadelphia might satisfy the requirements of his will but did not direct that the income from the foundation should in any event go to an institution located in that vicinity, we are of opinion he clearly intended the matter of location to be subordinate to the cultural and educational qualifications of the college finally selected. For that reason it cannot be said that Wilson College is ineligible on account of being located in Chambersburg, which is 156 miles by rail from Philadelphia, if in other respects it fulfills testator's desires.

We come, therefore, to a consideration of the merits of the three claiming institutions. The Philadelphia School for Christian Workers was incorporated in 1909 for the purpose of supporting "an educational institution to equip workers, both men and women to be pastors' assistants, rescue and mission workers and missionaries in the cities on the frontier and in foreign lands." It has a modest plant of old-fashioned four-story brick houses at 1122-26 Spruce Street, Philadelphia. At the time the testimony was taken before the auditor, there were 32 students in the school, of whom two were men. At present, there are no male students, we are informed by the briefs. Although there is an indication of intention on the part of the board of trustees to make the school exclusively for women, it is at present a coeducational institution.

The financial condition of the school seems adequate to the number of students now enrolled. The assets amount to more than $215,000, of which approximately two-thirds represent an endowment invested in securities. There is no mortgage against the property or other indebtedness. The endowment is, of course, far short of the $500,000 required by the Act of May 23, 1923, P. L. 319, of degree-conferring institutions thereafter to be

442

chartered. The school is, nevertheless, empowered to confer the degree of bachelor of religious education.

The course of instruction is necessarily limited. The eleven members of the faculty, four of whom are clergymen, teach a variety of subjects suitable to the needs of young women preparing to be pastors' assistants or mission workers. One-sixth of all the work done is Bible study. In addition there are courses in religious education, psychology and philosophy, church history, sociology, missions and government, English, music, physical training, bookkeeping and stenography. No Latin, Greek or Hebrew is taught or required. This absence of classical education in the school would perhaps be remedied by the acquisition of the "Wiltberger Professorship," but the present lack of such training indicates that the school is not now providing the broad and liberal education envisaged by Dr. Curran. Had testator intended to endow a mission school, this appellant would clearly satisfy the requirements of the will. His "long cherished purpose," however, was "to assist young women to secure a liberal education, which would be beyond their means, and thus prepare them for usefulness in higher spheres." The foundation he established was not in furtherance of missions as such, but "as a monument of my ardent love for the cause of missions." Had testator's money gone to the Philadelphia Bible Society, in accordance with the alternative provided in the will but subsequently revoked, his gift would have been no less a monument to the cause of missions even though not given to a mission school. So far as concerns the Philadelphia School for Christian Workers, we are of opinion the course of study, the type of instruction and the cultural atmosphere—although admirable for the purpose intended—are not what the donor of this foundation expected and desired in the institution which was to be the recipient of his benefaction.

In regard to Beaver College, we feel that it too falls far short of testator's great purpose. The present Beaver

College represents a merger of the old college, located at Beaver in Western Pennsylvania, and Beechwood School for Girls at Jenkintown, Pennsylvania, the consolidation having occurred in 1925. We need not discuss in detail the history and present status of the college. That information is set out in great detail in the auditor's report. A number of facts preclude an award to this appellant. The Presbyterian background (which testator clearly desired) is more apparent than real. Although the charter now provides that two-thirds of the trustees must be members of the Presbyterian Church, it was not until 1928 that this requirement took effect. In that year the college, having been formerly Methodist in affiliation, was officially approved as a Presbyterian College. Of more importance is the fact that the principal college buildings are poorly adapted to the needs of a first-class college. One was formerly a gaudy and pretentious country estate; another a shabby summer hotel. The properties are heavily encumbered with mortgages and the college has no endowment save the income derived from its dormitories. The library facilities are inadequate. The faculty, with the exception of the president, is underpaid. "The auditor believes, from his personal inspection of the classes and of some of the work done that a good deal of [the] instruction is elementary, some of it superficial. The type of instruction is not comparable to that given at Wilson." Bible teaching is inadequate, and classics, not being compulsory, are taught to merely a handful of students. "The emphasis of the institution is on vocational rather than cultural education." No more need be said to show that Beaver College cannot be given the award if the remaining claimant is better qualified.

Wilson College is located in Chambersburg. It was incorporated in 1869 and has been continuously a Presbyterian institution for women, having church oversight and receiving an annual appropriation from the Board of Christian Education of the Presbyterian Church in

the United States of America. At present twenty-six of the twenty-nine trustees of the college are Presbyterians. The auditor's report states: "The college stands on fifty acres of well-kept ground in the borough, charmingly situated, on which are erected the dormitories and other college buildings, including an excellent library, containing approximately 23,000 volumes, power-plant, music hall with an auditorium also used as a chapel, gymnasium and two buildings used for biology, physics and chemistry, with recitation rooms and well-equipped laboratories . . . . . . The auditor was impressed, in his visit to the college, with the excellent arrangement of the buildings, the modern conveniences of those that have recently [been] or are being added, and the cultural atmosphere of the college grounds and buildings." The college has no debts and an endowment of over seven hundred thousand dollars, invested in securities and cash.

Wilson is an "accredited" first-class college with admission standards equivalent to those of the leading women's colleges of the country. It offers two courses, one leading to the degree of bachelor of arts and the other to the degree of bachelor of science. At the time of the hearings before the auditor there were 420 students enrolled in the college and the faculty consisted of 47 full-time professors. The course of study is similar to that in all high-class liberal arts colleges, and includes a wide range of courses in Greek and Latin. Bible study is required, the auditor expressing his opinion that the Bible is conscientiously and competently taught at Wilson, and that Bible study forms an integral part of a girl's education at that college.

It is obvious that Wilson more nearly represents the type of educational institution which testator desired to benefit than do the other two claimants. During the entire course of this controversy the only valid objection raised to awarding the money to Wilson was the matter of location. We have already indicated why we think testator did not intend a location in or near Philadelphia

to be mandatory. We agree with the court below "that the auditor fell into error when he recommended that all of the essentials of Dr. Curran's plan were to be sacrificed in order that the institution should be in the Philadelphia neighborhood. Education such as this will specifies is a much more important thing than mere location." In addition, it should be noted that, even accepting Dr. Curran's language that the college be located in or adjacent to Philadelphia, we are not without valid grounds for believing that testator, under present conditions, would have expressed himself as entirely satisfied with an award to Wilson College. The rapid advance which has taken place in modes of transportation and communication since Dr. Curran's death in 1880 has altered the conception of the distance between places. The advent of the telephone and airplane, motor cars and paved roads, as well as faster and more frequent rail service, has greatly lessened the time required for all journeys. A trip from Chambersburg to Philadelphia is no more arduous at the present time than travel to the city from outlying districts at the time the will was written. Under the standards applicable in the lifetime of testator, Chambersburg may at present readily be considered "adjacent" to Philadelphia in considering and determining the question now before us.

Apart from these factors, the legal result reached in this case is entirely warranted by application of the cy pres doctrine. We are convinced that both of the institutions located in or near Philadelphia claiming this fund fall far short of what testator desired and intended. In order to give effect to his generous and far-sighted gift, it is necessary to look elsewhere for a suitable object for his bounty. "The meaning of the doctrine of cy pres, as received by us, is, that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable;

and so, of course, it must be enforced": City of Phila. v. Girard's Heirs, 45 Pa. 9, 28. See also Kramph's Est., 228 Pa. 455, and Toner's Est., 260 Pa. 49.

We are of opinion that Wilson College fully and adequately meets the requirements of testator's will and accordingly confirm the award of the income from the Curran Foundation to that institution.

The decree of the lower court is affirmed at the cost of the estate.