# In re Application of Pulaski Township Firemen

*A. G. Helbling*, for petitioners.
*George W. Lucas* and *James B. Ceris*, for respondent.

SOHN, J., June 19, 1951.—Five residents of Pulaski Township filed a petition for a charter for a corporation of the first class, known as Pulaski Township Firemen. Pulaski Township is a township of the second class, with a population of approximately 2,700 persons. The township is 8/10 of a mile wide, and 2 6/10 of a mile long. Another corporation of the first class has existed in the township for a period of 24 years. It is known as the Pulaski Township Volunteer Fire Department. Some of the members of this organization and others opposed the granting of a charter to applicants.

The Nonprofit Corporation Law of May 5, 1933, P. L. 289, section 207, provides in part:

". . . If the court shall find the articles to be in proper form and within the provisions of this act, and the purpose or purposes given in the articles to be lawful and not injurious to the community, the court shall so certify on the articles, and shall order and decree thereon that the articles are approved. . . ."

It is conceded that in the instant case the articles are in proper form and within the provisions of the act. It must be conceded that the incorporation of a volunteer fire department is lawful. The controversy in this case relates to the clause "not injurious to the community". As written, the act refers to the purpose not being injurious to the community. Petitioners contend that the court must find that a volunteer fire department is lawful and not injurious to the community. In the abstract this is true. It is therefore necessary to determine the scope of the inquiry which the court may make in determining whether or not a charter should be granted.

In Deutsch-Amerikanischer Volksfest-Verein, 200 Pa. 143, 145, Mr. Justice Mitchell said:

"The privilege of incorporation, and the requirements to obtain it, are wholly statutory. The courts are not entitled to grant or refuse the right except upon legal grounds, and the requirements fixed by law can neither be dispensed with, nor added to. Section 2 of the Act of April 29, 1874, P. L. 73, authorizes charters of incorporation, 'for the maintenance of a club for social enjoyments'. The court undoubtedly may and should look into the nature of the proposed social enjoyment, to see that it is 'lawful and not injurious to the community', and may require specific statements and evidence to that end. But necessity is not one of the requirements, and it is doubtful if it ever could be shown in the case of purely social clubs."

In Philadelphia Labor's N. P. L. Club's App. for Inc., 328 Pa. 465, 469, Mr. Justice Schaffer said:

"The duty of the court is somewhat different in passing upon charter applications laid before it from what it is in some other matters, because it is required by the law to certify that the purpose or purposes given in the articles are lawful and not injurious to the community. The applicants must satisfy the court as

to the propriety of its certificate, 'otherwise', in the language of the act, 'the court shall refuse the application'. It should always be borne in mind that in charter applications the applicants are asking the court for a special privilege as to the propriety of granting which, its conscience must be satisfied."

In re Elkland Leather Workers' Association, Inc., 330 Pa. 78, 81, the following statement appears:

"Under Section 207, if the court finds, inter alia, the purposes given in the articles lawful and not injurious to the community, the court shall order the articles approved. Here the court found the purposes to be lawful, and so stated in its approving order. To the court of common pleas the legislature has entrusted the responsibility of determining whether the application conforms to the Act. Whether the court below has acted prudently here is not for this court to decide."

In Incorporation of the American United Russian League of Lackawanna County, 40 Lack. Jur. 199, Judge Hoban said (p. 201) :

"While the purposes set forth in the application are not unlawful and probably would authorize the incorporation of any group of persons who desired to associate themselves together for these objects, it seems to be contrary to the principles of equity to allow a charter to be granted to an organization with a name identical with that of an unincorporated association, which has long continuity of existence and intends to continue in existence. If these applicants desire to form an organization for the purposes set forth in their application, there is no reason why they may not do so, but they cannot appropriate the name of another organization which has a recognized existence and standing in the locality, nor can they adopt any name which is deceptively similar thereto."

In In re Animal Humane Society of Pennsylvania, 33 D. & C. 327, 328, President Judge Knight said:

"In this case, as we see it, we have but one question to decide, namely: Whether the proposed corporation will be injurious to the public welfare? . . .

"We deem the proposed organization entirely unnecessary, for we are convinced by the evidence that the existing organizations operating in Lower Merion Township are equipped and able, in connection with an efficient police force, to protect animals from cruelty. No case was brought to our attention where any abused or distressed animal in Lower Merion was not promptly and effectively given relief. After a careful examination of the evidence, we are of the opinion that a grant of this application will not be for the best interests of the animals, and will be harmful rather than helpful to the community. . . ."

In In re Incorporation of Automatic Phonograph Owners Assn., 45 D. & C. 551, 554, Judge Alessandroni said:

"The applicant has urged upon us that in our consideration we are limited to an examination of the purposes of the corporation, to determine whether or not they be 'lawful and not injurious to the community'. This, however, disregards the provision of the Nonprofit Corporation Law, which provides: 'If the court shall find the articles to be in proper form and *within the provisions of this act* . . .': Article II, sec. 207, 15 PS §2851-207. (Italics supplied.) We thus understand our primary function to be a determination of whether or not the corporation qualifies within the class of nonprofit corporations. Out of our examination of the application and the entire record we have answered that inquiry in the negative."

In In re American League of Theatrical Arts, etc., 48 D. & C. 700, 701-702, Judge Alessandroni said:

"Secondly, implicit, although not articulated in our Nonprofit Corporation Law, is a sense of public interest and public benefit; that the privileges and

immunities to be vested by the grant of such a charter should not be lightly conferred without some quo pro for the community. It is not sufficient that there be a compliance with the statutory requirements. There should affirmatively appear a reason or function of general interest which will be served by a grant of the application: Rox Athletic Association's Charter Application, 318 Pa. 258 (1935). It is in such a sense that we regard our statutory obligation of determining whether the purposes of the proposed corporation are 'lawful and not injurious to the community': Nonprofit Corporation Law of May 5, 1933, supra, art. II, sec. 207."

In Incorporation of Scranton Sportswear Welfare Assn., 57 D. & C. 91, 95-96, Judge Hoban said:

"This court would be on very dubious ground if it appeared to give legal sanction to an association when the bona fides of its purpose of existence is challenged at the very beginning of that existence before an agency of government having primary jurisdiction of the subject matter. To decree incorporation now on the apparently innocent statement of purpose, in the face of a serious dispute to be determined in another forum as to the actuality of that purpose, might in effect impose a legal limitation on the law as to unfair labor practices, a thing which is forbidden by the Nonprofit Corporation Law itself, that 'Nothing in this Act shall abrogate or limit the law as to unfair competition or unfair practices . . .': Nonprofit Corporation Law of Pennsylvania, sec. 202(c), supra."

In Sharon Boxing Club's Incorporation, 62 D. & C. 136, 138-139, President Judge Rowley said:

"But even under the Act of 1874 the principal enquiry for the court was whether the purposes were lawful and not injurious to the community.

"Quite logically, the legislature and the appellate courts assumed that the hearing judge would be best

qualified to determine what promised injury to the community. There was no appeal from the determination of the judge: Appeal of Vaux, 109 Pa. 497, 1885. However, an abuse of discretion only was reviewed upon certiorari: Elkland Leather Workers' Association, 330 Pa. 78. . . .

"The court has the clear obligation to scrutinize all applications. The wholesome profession of the application does not relieve the judge of the duty to look beyond the bare averments of the application and determine whether there is any probability that the proposed corporation will contribute to drunkenness, gambling, idleness or in any manner prejudice the morals, health or safety of the citizens."

In In re National Foundation of Dramatic Arts, 62 D. & C. 343, 344-347, Judge Alessandroni said:

"This does not mean, however, that the court has been circumscribed by a limitation permitting it to function only in a ministerial capacity and to determine matters of form and superficial expressions of purpose: Rox Athletic Assn. Charter Application, 318 Pa. 258. . . .

"We are of the opinion that the phrase 'within the provisions of the act' read in conjunction with the entire statute requires the court to determine whether this special privilege shall be granted without restricting itself merely to ascertaining whether· there has been compliance with the formal requirements. . . .

". . . There should appear affirmatively a reason or function of general interest which would be served by the grant of the application. We believe that the term 'not injurious to the community' is not solely negative in its connotation and does not require that there appear affirmatively an injurious effect on the community by the operation of such an association. The injurious effect of the indiscriminate grant of

such charters is well illustrated by the existence of many spurious associations which do little more than meet the literal requirements of the statute. Moreover, we cannot be restricted to the purposes superficially set out in the articles of incorporation which frequently becloud the manifested real purpose."

In Citizens League of Wheatfield Township, 65 D. & C. 70, 78-82, President Judge Rice said:

"There have been numerous instances of the exercise of this power to 'look into the nature' of the objects and purposes of an intended corporation. It means more than an interpretation of the language used in the articles to state the purposes. The purposes declared in the articles may be very innocent and idealistic and may lead one to think that the proposed corporation will contribute to the coming of the millenium, but, on the other hand, they may cloak and conceal the real design of the incorporators, which may be an evil one and be injurious to society. If it were not for this power of the court a gang of criminals might be incorporated although their articles of association contained purposes that would greatly benefit the community if accomplished. . . .

"Other cases where the courts made inquiry into the real purposes of the incorporators, beyond their purposes set forth in the articles, are: Scranton Sportsmen's Welfare Assn., 57 D. & C. 91; Am. League of Theatrical Arts, 48 D. & C. 700; Am. Christian League, 31 Del. Co. 175; Am. United Russian League, 36 D. & C. 699; Penna. Retirement Life Payments Assn., 34 Luz. L. R. 329; Jehovah's Witnesses, 55 York 186. All these cases assert the duties and authority of the court under section 207 of the Nonprofit Corporation Law.

"Taking it all in all, it is a most unhealthy and unhappy condition of affairs in the township. To grant the charter will tend to intensify and perpetuate this

feeling, which will be a distinct injury to the community. We cannot find and certify that the real purposes of the proposed corporation will not be injurious to the community."

We have extended this opinion to unusual length in order to demonstrate what has been the judicial interpretation of the statute. A fair distillation of these cases is that the court should determine whether or not the particular corporation will be injurious to the community. In other words, granting that a volunteer fire department per se is not injurious to the community, will this corporation be injurious to the community?

A brief reference to the facts will demonstrate that to grant a charter to applicants would be injurious to the community. About six years ago the ladies' auxiliary and the Pulaski Township Volunteer Fire Department had a serious disagreement. An equity case was heard and adjudicated by the court. The determination of that case was favorable to the auxiliary because it was not established that the auxiliary was legally a part of, or under the supervision of the fire department. Funds of the auxiliary were declared to be their separate property. The conclusion reached in that case left the auxiliary without a fire department to which it could be attached. The present applicants are in sympathy with members of the former auxiliary. The evidence indicates that resentment and bitterness still exists between the former auxiliary and the department. It is uncontradicted that there would be no coöperation between the present and the proposed departments. One witness expressed the opinion that if both groups arrived at the scene of a fire, they would be more likely to fight each other, than to fight a fire. Such a condition in a small community would certainly be injurious to the community. We are compelled, under the facts in this case, to conclude

that the purpose of the proposed corporation would be injurious to the community. The application should be denied.

### *Order*

And now, to wit, June 19, 1951, it is ordered, adjudged and decreed that the purpose of the proposed corporation would be injurious to the community, and the application for a charter is hereby refused.