609 A.2d 837

Patricia Gillies HERCULES

v.

Arnold F. JONES, Executor of the Estate of Harold C. Terwilliger, Deceased, Robert H. Rogers, Arnold F. Jones and Donna Jones, Individually.

Appeal of Arnold F. JONES, Executor of the Estate of Harold C. Terwilliger, Deceased and Arnold F. Jones and Donna Jones, Individually.

Superior Court of Pennsylvania.

Argued April 22, 1992.

Filed June 23, 1992.

450

William M. Kern, Clarion, for appellant.

Terry R. Heeter, Clarion, for Hercules, appellee.

Before TAMILIA, HUDOCK and HESTER, JJ.

TAMILIA, Judge:

Arnold F. Jones, executor of the estate of Harold C. Terwilliger, takes this appeal from the October 25, 1991 judgment entered against defendants and in favor of plaintiff/appellee Patricia Gillies Hercules.

In 1968, when in danger of losing their 157–acre farm as a consequence of their failure to meet mortgage obligations, Harold C. Terwilliger and his wife, Zona M. Terwilliger, placed the farm in joint ownership with Richard E. Gillies, Jr., or Patricia Gillies, his wife, in exchange for the Gillies satisfying the mortgage. In 1975, the Terwilligers and Gillies Hercules, whose husband had passed away, entered two option and lease agreements with Mauersburg Coal Company which provided the lessors would receive $1.25 for each ton of coal mined from the farm. Mrs. Terwilliger died two years later and Harold resided on the farm until his demise in 1979. Appellee Gillies Hercules has resided in Ohio since 1975.

During the summer of 1978, Mauersburg commenced surface mining operations on the farm and paid all royalties due pursuant to the leases directly to Harold Terwilliger. The amount paid is averred to have been $5,887.37. From September of 1978, when the leases were assigned to Wagner Coal Company, until Terwilliger's death in 1979, royalties totalling $43,169.87 were likewise paid directly to Terwilliger, who, on April 2, 1979, placed appellant Jones' name on the savings and checking accounts in which the royalties were deposited. At no time did Terwilliger distribute to appellee her share of the royalties, owed as a consequence of her position as co-owner of the property and co-lessor of the lease to mine. In 1979, while attending Terwilliger's funeral, appellee Gillies Hercules became aware mining on the farm had begun and, on January 18, 1980, made a demand on the estate for one-half of the royalties. Appellee's demand was unsuccessful because the assets of the estate, which included, in addition to the farm, approximately $9,200 in personal property and a 26–acre tract of land, had been distributed without consideration for her claim.

In February, 1982, appellee filed suit in equity demanding, among other things, the executor hold in trust and be enjoined from conveying the proceeds of the estate's bank accounts. Appellee also demanded $24,528.62 plus interest representing her one-half interest in the royalties.[1]

Sitting without a jury the court found, *inter alia,* appellee held undivided half interests in the 157-acre farm and the coal leases and was, therefore, entitled to a judgment against the estate for one-half of the royalties together with interest at a rate of six per cent (6%) per annum from the date of each royalty payment, said sum as of June 6, 1991, being $43,149.49. Appellant's post trial motions were denied and this appeal followed.

Appellant presents eight issues for our consideration, beginning with an allegation the court erred by denying his preliminary objections. Appellant argued appellee should have been precluded from pursuing an action in equity when there was an adequate remedy at law for her to recover what appellant characterized as a mere debt.

This Court's scope of appellate review in equity matters is narrow and is limited to determining whether findings of fact are supported by competent evidence, whether an error of law has been committed or whether there has been a manifest abuse of discretion. *Riccelli v. Forcinito,* 407 Pa.Super. 629, 595 A.2d 1322 (1991). In appellee's prayer for relief she requested not only monetary compensation but also that the executor appellant be precluded from disposing of any of the proceeds from the decedent's bank accounts and that said proceeds be held for her in trust. We find, because a request for the establishment and enforcement of a constructive trust is a matter within the jurisdiction of a court of equity, appellee would be unable to obtain a full remedy at law and, therefore, the court properly denied appellant's preliminary objections.

1. Appellee's findings of fact, adopted by the trial court, erroneously aver her one-half share of the royalties, which total $49,057.24, equals $24,527.62. (*See* Findings of Fact, # 22, 24, 25 and 27.) This minor math error has been corrected by this memorandum.

*See Martino v. Transport Workers' Union of Phila.*, 505 Pa. 391, 480 A.2d 242 (1984) (A court of equity has jurisdiction and will afford relief if the statutory or legal remedy is inadequate or if equitable relief is necessary to prevent irreparable harm). *See also Peoples–Pittsburgh Trust Co. v. Saupp,* 320 Pa. 138, 182 A. 376 (1936) (The mere fact a remedy at law exists is not sufficient to oust equitable jurisdiction; the question is whether the remedy is adequate or complete).

■ Next, appellant claims the court erred by granting appellee's application to amend her complaint to add party defendant Donna J. Jones. Appellant also contends Jones' demurrer at the close of appellee's case was improperly denied. Appellant contends the motion to add Jones was not verified and appellee failed to state a cause of action against her.

Appellant's boilerplate allegations will be responded to in an equally curt manner. An application to amend a complaint to add a party defendant pursuant to Pa.R.C.P. 2232(c) is not a pleading and, therefore, need not be verified by the plaintiff. Pa.R.C.P. 2232, Defective Joinder. Change of Parties. The cause of action against the defendant being added as a party defendant is set forth in the complaint and not in the Rule 2232(c) application. Appellant's allegation the court erred by denying Jones' demurrer at the close of plaintiff's case was not preserved for review. *Hreha v. Benscoter,* 381 Pa.Super. 556, 554 A.2d 525 (1989), *appeal denied,* 524 Pa. 608, 569 A.2d 1367 (1989).

Next, appellant avers the court erred by ruling Jones' claim of laches did not bar Hercules from recovering in this action. Appellant's "argument" states the defense of laches was raised in the pleadings, and laches is defined as "neglect for an unreasonable time under circumstances permitting diligence to do what in law should have been done, and as an implied waiver." (Appellant's brief at p. 10.) However, without any argument linking the definition to the facts of this case, this Court is unable to address

appellant's phantom argument and we find the issue to be waived.

▪ Appellant's fourth argument contends the court erred by finding appellee's amended complaint was filed in a timely fashion, in alleged contradiction to the Pennsylvania Rules of Civil Procedure. Rule 1028, Preliminary Objections, which governs the disposition of preliminary objections, is relied upon by appellant in support of his argument. Pa.R.C.P. 1028. Appellant argues appellee's failure to file her amended complaint until one year and seven days after the application to amend was granted violated Rule 1028(e) which requires an amended complaint be filed within sixty (60) days after notice of the Order permitting such filing or within such other time as the court may fix.[2] We hold Rule 1028 does not apply to the amendment of a complaint to join a party defendant pursuant to Pa.R.C.P. 2232(c), *supra*. Therefore, appellant's argument is without merit.

The next three issues raised by appellant address the trial court's conclusion of law the Terwilliger/Gillies deed created a joint tenancy between each married couple (Harold and Zona Terwilliger and Richard and Patricia Gillies), with each married couple holding an undivided one-half interest in the farm by the entireties. The deed conveyed the land in accord with the following language:

> H.C. Terwilliger or Zona Terwilliger, his wife, of Clarion Township, or Richard E. Gillies, Jr. or Patricia Gillies, his wife, of 130½ West Sandusky Avenue, Bellefontaine, Ohio
>
> . . .
>
> to the said grantees, or the survivor of them as joint tenants with the right of survivorship in all of the grant-

---

**2.** Although appellant alleges a rule violation and an error by the court, he offers no suggested remedy should this Court find error. This Court notes with disfavor this capricious reasoning by appellant or lack thereof is reflected throughout his brief.

ees and to the last survivor of them and not as tenants in common ...

The deed has two possible interpretations: 1) joint tenancy with each of the four grantees individually holding an undivided one-quarter interest; or, joint tenancy between the married couples, with each couple holding their undivided half interest as tenants by the entireties. Appellant urges the court adopt the former interpretation which would result in appellant, his wife and appellee each having owned an undivided third interest in the property when the coal leases were signed. (Appellee's husband had since passed away.) Each joint tenant would, therefore, have been entitled to one-third of the coal royalties, with Zona's one-third passing to appellant upon her demise. The court's interpretation, and that suggested by the appellee and adopted by this Court, is alternative number two wherein the Terwilligers and the appellee each owned a one-half interest in the farm when the leases were signed, with each family being entitled to one-half of the coal royalties.

When interpreting instruments of conveyance, the court's primary objective is to ascertain and effectuate the parties' intent. *Quarry Office Park Associates v. Philadelphia Elec. Co.,* 394 Pa.Super. 426, 576 A.2d 358 (1990). When the language of the document is free from ambiguity, the intent of the parties must be determined from the language of the deed. *Wysinski v. Mazzotta,* 325 Pa.Super. 128, 472 A.2d 680 (1984). In the case of ambiguous instruments, intent is determined by the situation and conduct of the parties, surrounding circumstances, the object they had in view and the nature of the subject matter. *Rusciolelli v. Smith,* 195 Pa.Super. 562, 171 A.2d 802 (1961). Where an uncertainty exists as to applicability of vague or ambiguous language, the court may resort to extrinsic or parole evidence to explain, but not vary the written word of the deed. *Doman v. Brogan,* 405 Pa.Super. 254, 592 A.2d 104 (1991). Consideration may also be given to subsequent acts of the parties. *Id.*

Although arguably the conveying language is somewhat ambiguous, we find the extrinsic evidence supports a

finding the two couples each held their half interest as tenants by the entireties as between them, and as joint tenants with the right of survivorship as between the two couples. Hercules testified explaining the circumstances giving rise to the creation of the deed (N.T., 6/6/91, pp. 6–9). In addition, a copy of the inheritance tax appraisement, which was admitted as part of plaintiff's exhibit 12 and is included in the appellee's reproduced record, listed the farm as being jointly held. The inheritance tax return is more persuasive in light of the fact it was filed by appellant in his capacity as executor of the estate. Also, as reasoned by the trial court:

> When making this limited interpretation, [basing an interpretation solely on the deed's wording] the defendants argue that the Court should place greater weight on the use of the terms "or" and "all of the parties" than on the terms [sic] "his wife." Even this limited interpretation overlooks the decision of the Supreme Court in [*Heatter v. Lucas*, 367 Pa. 296, 80 A.2d 749 (1951)] which reasoned that:
>
> > The words 'his wife' can not be treated as mere surplusage; they occur in context in the classic form for the creation of a tenancy by the entireties. The significance to the marital status of two of the grantees.
>
> *Id.*, 367 Pa. at [301,] 80 A.2d at 752. Even if the interpretation is limited to the four corners of the Terwilliger Deed, the significance of the term "his wife" is sufficient to support our finding.

(Slip Op., Greiner, J., 9/24/91, p. 7.) We find the trial court did not err and appellant's argument challenging appellee's proprietary and monetary interests in the farm and the leases is without merit.

Appellant's final argument alleges the court erred by imposing a constructive trust on the estate's savings and checking accounts.

A constructive trust arises when a person holding title to property is subject to an equitable duty to

458

convey it to another on the ground he would be unjustly enriched if he were permitted to retain it. *Yohe v. Yohe,* 466 Pa. 405, 353 A.2d 417 (1976); *Denny v. Cavalieri,* 297 Pa.Super. 129, 443 A.2d 333 (1982). The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. *Id.* The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment. *Roberson v. Davis,* 397 Pa.Super. 292, 580 A.2d 39 (1990). One who seeks the imposition of a constructive trust must do so by clear, direct, precise and convincing evidence. *Id.*

█ Having found appellee held a one-half interest in the coal leases, it follows she is entitled to one-half of those royalties paid to the decedent. To ensure that obligation be satisfied, the court properly constructed a trust precluding the executor from disposing of or otherwise encumbering the savings and checking accounts funds.

Based on the foregoing reasons of law and fact we affirm the October 25, 1991 judgment in favor of Patricia Gillies Hercules.

Judgment affirmed.