**In re SUPERIOR–PACIFIC FUND, INC.,
a Non–Profit Corporation.**

**Appeal of SUPERIOR TUBE COMPANY,
CAWSL Corp. and William G.
Warden, III, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1997.

Decided March 26, 1997.

Reargument Denied May 28, 1997.

Louis J. Sinatra, Blue Bell, for appellees.

Before COLINS, President Judge, DOYLE, Judge (P.), and LORD, Senior Judge.

DOYLE, Judge.

Appellants, Superior Tube Company, CAWSL Corporation and William G. Warden, III, (collectively, the "Wardens") appeal from an order entered by the Honorable Stanley R. Ott of the Court of Common Pleas of Montgomery County, which denied their motion for summary judgment and granted the cross motion for summary judgment in favor of Paul E. Kelly and Paul E. Kelly, Jr.

This appeal arises out of a disagreement over the management of Superior–Pacific Fund, Inc. (the FUND), a non-profit corporation which exists solely for charitable purposes and is valued in excess of fourteen million dollars.

The pertinent facts are as follows. Superior Tube Company (Superior Tube) was founded in 1934 by Clarence Warden and S. Landis Gabel. Paul E. Kelly, Sr. began a lifelong employment with Superior Tube in 1936. He served as an officer and manager, and, in 1967, he became the president of the company. In 1983, Paul Kelly was named chairman of the board of directors and chief executive officer of Superior Tube.

CAWSL was incorporated in 1981 to serve as the holding company for Superior Tube and its subsidiaries. Paul Kelly's son was elected president of CAWSL in 1983, and, in 1984, he was elected a director of that corporation. By 1995, CAWSL had a net worth of approximately $350,000,000, and the Warden family is currently the majority stockholder.

Clarence Warden's son, William, joined the management of CAWSL in 1995, and, shortly thereafter, the Wardens and the Kellys had a falling out. Paul Kelly left Superior Tube and, on May 23, 1995, Paul Kelly, Jr. and CAWSL executed a Settlement Agreement, which provided for his resignation as president of CAWSL and also provided that he resign from its board of directors and from all of its "direct and indirect subsidiaries."

Alfred W. Putnam, Jr., Philadelphia, for appellants.

The non-profit corporation, the FUND, the management of which is now in dispute, originated as a charitable trust. On December 22, 1952, a Deed of Trust was entered into, with Superior Tube as settlor and Paul Kelly, Clarence Warden, Richard Gabel, S. Landis Gabel and Charles Pugh as the trustees. The trial court accurately stated that the purpose of the trust was to "promot[e] the 'well-being of mankind or the general welfare of society' to be accomplished by distributing funds to scientific, educational, religious and charitable organizations, as well as awarding scholarships to 'worthy young men and women.'" (Trial Court's Opinion at 1.) Paul Kelly has served as the principal manager of the charitable trust since its inception.

Article X(a), (b) and (c) of the Deed of Trust provided that there was to be "no less than three nor more than five trustees at all times" and that Superior Tube could remove and appoint successor trustees. However, article X(f) of the Trust Deed stated that Superior Tube could relinquish its power to remove and appoint trustees, either temporarily or permanently, and that if it did so, this power would then vest in the trustees themselves.

On October 25, 1974, three of the surviving original trustees, Paul Kelly, Clarence Warden and Richard Gabel, each of whom were also the officers, managers and controlling shareholders of Superior Tube, filed articles of incorporation thereby incorporating the trust as a non-profit corporation, designated the Superior–Pacific Fund, Inc., or herein, the FUND. The three incorporators, who attached a copy of the 1952 Deed of Trust to the articles of incorporation in order to identify the intent and purposes of the FUND, were named as the directors of the FUND, while also remaining as directors of Superior Tube.

The bylaws of the corporate FUND established that the incorporators, Paul Kelly, Clarence Warden and Richard Gabel, would constitute the "membership" of the FUND. They also provided that new members of the FUND would be admitted only by members

of the FUND and that a member may be terminated by a vote of the members of the FUND. The incorporators adopted the bylaws of the corporation on September 16, 1974.

On January 25, 1975, the Orphans' Court of Montgomery County, upon the petition of the surviving original trustees, Paul Kelly, Clarence Warden and Richard Gabel, for leave to terminate and for adjudication, entered a decree terminating the trust and ordering that its assets be distributed to the newly formed corporate FUND. Thereafter, on June 6, 1975, a separate charitable non-profit corporation, the West Coast Fund, also a subsidiary of Superior Tube, was collapsed into the FUND, resulting in the FUND being worth $1.4 million at the end of 1975. As the result of these legal measures, the trust, as it was originally created, no longer existed.

By the time that Paul Kelly resigned from Superior Tube in January of 1995, he was the only surviving member of the FUND. He was then the president of the FUND, and his son was the assistant secretary, treasurer, and a director of the FUND. William Warden, Clarence Warden's son, was also an officer and a director of the FUND, but neither he nor Paul Kelly, Jr. were members.

On September 27, 1995, Paul Kelly, acting pursuant to the power designated in the bylaws of the FUND, appointed his son a member of the FUND. He advised William Warden of this appointment, as well as informing him that the FUND's principal business office had been moved and that the Kellys, as directors of the FUND, had amended the bylaws.[1] The Kellys did not remove William Warden as a director of the corporation.

Upon receiving this news, the board of directors of CAWSL passed a resolution ostensibly removing the Kellys as directors and members of the FUND and appointed William Warden and his son, as well as a third party, as members and directors. Thereafter, Superior Tube passed the very same resolution.

---

1. When Paul Kelly, Jr. left CAWSL on September 30, 1995, he took with him the books and records of the FUND.

■ The Kellys refused to surrender the books and records of the FUND, and litigation ensued with both parties filing cross-motions for summary judgment. The trial court, concluding that the Kellys were the lawful members and directors of the FUND, granted summary judgment in their favor. This timely appeal followed.[2]

The issues for our review are as follows: 1) Did the lower court err in concluding that the FUND is controlled by its "members" as mandated by its bylaws? 2) Is Paul Kelly estopped from arguing that the governance power[3] belongs to him? 3) Even if Paul Kelly is not estopped, is he, as the only surviving member of the FUND, authorized to appoint additional members? 4) Did the trial court err in concluding that no basis exists to impose a constructive or resulting trust on the funds delivered to the FUND for the benefit of the designees of Superior Tube?

■ In arguing that the trial court erred in concluding that the FUND is controlled by its "members" and not by Superior Tube, the Wardens contend that because the Deed of Trust was appended to the articles of incorporation of the FUND, Superior Tube's governance power, pursuant to article X(f) of the Deed of Trust, survived the change in the charitable entity.

The trial court entered judgment in favor of the Kellys because it determined that Superior Tube relinquished its governance power when the charitable trust was terminated in 1975 and the assets were transferred to the charitable FUND. It found that Superior Tube's governance power was not expressly carried over into the bylaws of the FUND. We agree with this determination.

Initially, we recognize that the Nonprofit Corporation Law of 1988 (Act)[4] provides that the bylaws of a non-profit corporation are the governing document for defining membership.[5] Furthermore, section 5751 of the Act, 15 Pa.C.S. § 5751, establishes that membership in a non-profit corporation is controlled by the bylaws. It states the following, in pertinent part:

(a) **General Rule**—Membership in a non-profit corporation shall be of such classes, and shall be governed by such rules of admission, retention, suspension and expulsion, as bylaws adopted by the members shall prescribe. . . .

The sections in the bylaws of the FUND concerning "membership" state the following:

Section 2.01. *Members*. Each person signing the Articles of Incorporation shall be a member of the Corporation. New members may be admitted to membership in the corporation by a majority vote of the members of the Corporation.

Section 2.02. *Termination of Membership*. The membership of a member of the Corporation shall be terminated by a vote of a majority of the members of the Corporation.

Thus, the bylaws mandate that Paul Kelly, Clarence Warden and Richard Gabel were, as the originating "members" of the FUND, the individuals who had the authority to determine any changes in the membership. Because Paul Kelly was the only surviving "member" of the FUND when he and his son left CAWSL in 1995, he lawfully appointed his son a "member" pursuant to section 2.01 of the bylaws.

Indeed, the articles of incorporation of the FUND do reference the Deed of Trust, as

---

2. A motion for summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. No. 1035(b). When reviewing an order granting summary judgment, this Court is limited to determining whether the lower court committed an error of law or abused its discretion. *City of York v. Schaefer Temporary Services, Inc.*, 667 A.2d 495 (Pa.Cmwlth.1995).

3. We have adopted the term, "governance power," to define the power to remove and appoint trustees.

4. 15 Pa.C.S. §§ 5101–6145.

5. 15 Pa.C.S. § 5103 provides, "One having membership rights in a corporation in accordance with the provisions of its bylaws."

appellants allege. Article 3 states the following:

> 3. The corporation is incorporated under the Non–Profit Corporation Law of the Commonwealth of Pennsylvania for the following purpose or purposes:
>
>> To more effectively carry out the intent and purposes of the Trust arising under that certain Trust Indenture dated December 22, 1952, under the terms of which Superior Tube Company created the Superior Pacific Fund and transferred certain property in trust for the charitable and benevolent uses as set forth therein. A verified copy of the said Trust Indenture, as reformed and currently in effect, is attached hereto.

We conclude, however, that article 3 makes it clear that the attachment of the Deed of Trust to the articles of incorporation was meant only as a means of convenience in order to define, by reference, the charitable purposes of the FUND.[6] Accordingly, Superior Tube's governance power did not survive the change in the entity.

Additionally, we find persuasive the fact that the FUND's bylaws define "members" as the individuals who signed the articles of incorporation. Sections 5302 and 5760 of the Act provide that for-profit corporations can both incorporate nonprofit corporations and be appointed as members of non-profit corporations. Therefore, if Superior Tube had wanted to continue to control the FUND, it could have incorporated the FUND itself.[7] Therefore, we find no error by the trial court in holding that when the trust was terminated and its assets distributed to the FUND, Superior Tube relinquished its governance power, as it was entitled to do under article X(f) of the Deed of Trust.

■ Likewise, we find no merit to the Wardens' second contention that the Kellys were judicially estopped from arguing that the governance power belongs to them. Under the doctrine of judicial estoppel, "a party is bound by his judicial declarations and may not contradict them in a subsequent proceeding involving the same issues and parties." *Black's Law Dictionary* (6th ed.1990); *see also Ligon v. Middletown Area School District,* 136 Pa.Cmwlth. 566, 584 A.2d 376 (1990). The Wardens argue that in his 1974 termination and adjudication petitions, Paul Kelly stated that the Deed of Trust was " 'incorporated by reference' in the Fund's [A]rticles and was 'attached to and made a part of' the Articles" (Appellant's brief at 26). Thus, the Wardens argue that this declaration represented to the Orphans' Court that Superior Tube's governance power survived the change in the entity, and, therefore, the Kellys may not now present evidence that contradicts that position.

■ We find no evidence in the record, including the above excerpts from the documents in the FUND's incorporation, that Paul Kelly represented that Superior Tube's *governance power* would survive. To the contrary, the record reveals that the governance power was not at issue in the termination proceedings. As such, the Kellys were not estopped from asserting that Supe-

---

6. Section 5306 of the Act states that the articles of incorporation shall set forth "[a] brief statement of the purpose or purposes for which the corporation is incorporated." 15 Pa.C.S. § 5306.

7. We reject the Wardens' contention that the determination of the management of the FUND is governed by the law of trusts and not by principles of corporate law. The Wardens cite the following cases to support their argument that a corporation cannot be permitted to administer the terms of a trust if the provisions of the corporation's bylaws are inconsistent with the intent of the settlor expressed in the Deed of Trust: *Appeal of Vaux,* 109 Pa. 497 (1885), *In re Garrett–Williamson Lodge,* 239 Pa. 474, 86 A. 1072 (1913), and *Curran Foundation Charter,* 297 Pa. 272, 146 A. 908 (1929). We find that the Wardens' reliance on these cases is misplaced since each of them concern whether the corporations at issue were incorporated with the same purposes established by the instruments that originally created the charities. In the case *sub judice,* it is undisputed that the FUND was incorporated with exactly the same benevolent purposes as the Deed of Trust. The Wardens' argument is based on the assumption that the judge who granted the petition to terminate the trust in 1974 would have had to do so only after concluding that all of the provisions in the Deed and the bylaws were consistent. We find nothing in the record that would support the Wardens' position. Thus, we find no merit to the assertion that principles of trust law govern the outcome of this case.

rior Tube relinquished its governance power when the trust was terminated in 1975 and its assets distributed to the FUND.[8]

The Wardens' third contention is that Paul Kelly is not authorized to appoint additional members because he is the sole surviving member of the FUND. First, the Wardens again rely on principles of trust law and cite to *Trimble's Estate*, 383 Pa. 443, 119 A.2d 51 (1956), which held that a provision in a will demonstrated an intent that successor trustees were to be appointed by more than one trustee. We find that *Trimble's Estate* is not controlling because, as mentioned previously, trust law principles do not govern the result in this case.

Indeed, as corporate law governs the outcome, we recognize that the Act does not prohibit the activity of a non-profit corporation with only one member but, in fact, provides for a contingency where no members at all exist. *See* 15 Pa.C.S. § 5751(b).

■ Second, the Wardens argue that even if trust law is inapplicable, the bylaws of the FUND prohibit a sole surviving member from acting on behalf of the non-profit corporation. Appellants cite section 2.01 of the bylaws, which provides for the admission of new members by a majority vote of the members, and section 3.03, which states that special meetings of members may be called by "any three members of the Corporation." We disagree that these sections create such a prohibition. Moreover, as the Kellys note, appellants must have felt that a single member could act on behalf of the FUND because they never tried to appoint new members when Clarence Warden and Richard Gabel died, thereby leaving Paul Kelly as the only surviving member.

■ Finally, the Wardens contend that Superior Tube donated more than $6,000,000 to the FUND while mistakenly believing that its governance power survived the change in the charitable entity, and, therefore, the assets of the FUND "should be deemed to be held by the Kellys in trust—to be distributed to charities chosen by Superior Tube...." In essence, the Wardens are seeking a constructive trust.

The Wardens rely on *Hercules v. Jones*, 415 Pa. Superior Ct. 449, 609 A.2d 837 (1992), to support their contention. While recognizing that decisions of our sister Superior Court are not binding upon this Court, we always give great deference to their persuasive wisdom and logic and quote the following statement in *Hercules* because it provides a concise summary of the law on constructive trusts:

> A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it. The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment. One who seeks the imposition of a constructive trust must do so by clear, direct, precise and convincing evidence.

*Id.* at 457–58, 609 A.2d at 841 (citations omitted).

■■ With these principles in mind, we agree with the trial court that the Wardens have failed to demonstrate how the Kellys are unjustly enriched by managing the charitable corporation. As Judge Ott accurately noted, no one disputes that Paul Kelly has performed admirably and is highly dedicated to fulfilling the charitable purposes of the FUND. We reject the Wardens' assertion that "the ability to designate the recipients of

---

8. In order for the Wardens to succeed in this argument, they must meet the following elements: 1) the issue decided in a prior case is identical to the one presented in the later case; 2) a final judgment on the merits was reached; 3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; 4) the party against whom the doctrine of claim preclusion is asserted had a full and fair

opportunity to litigate the issue in the prior proceeding; and 5) the determination of the prior proceeding was essential to the judgment. *See Office of Disciplinary Counsel v. Duffield*, 537 Pa. 485, 644 A.2d 1186 (1994). In this case, the Wardens did not even discuss the elements necessary for them to show that the Kellys were estopped from arguing their position in the court below. Therefore, the claim is baseless.

hundreds of thousands of dollars each year is 'enriching,'" at least in the legal sense. Rather, throughout the years, it has been the recipients of the charity who have been enriched, due to the decisions of the Kellys and the Wardens, and note particularly that all members, directors and officers of the FUND serve without compensation.[9]

Additionally, we find nothing in the record which establishes that Superior Tube donated money to the FUND under the mistaken belief that its governance power survived. To the contrary, since the incorporators of the FUND who, under the bylaws, were the "members" of the entity and were the same individuals who owned and controlled Superior Tube, it seems unlikely that Superior Tube did not realize that it had relinquished its governance power.

Accordingly, we find that the trial court did not err in granting summary judgment in favor of the Kellys.

Order affirmed.

## ORDER

**NOW,** March 26, 1997, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.

9. It follows that no basis exists to establish a resulting trust, which may arise only where a disposition of property is made which raises an inference that it was not intended that the person or entity holding the property was to have the beneficial interest in it. *See Policarpo v. Policarpo,* 410 Pa. 543, 189 A.2d 171 (1963). The Wardens do not allege that Superior Tube did not intend the FUND to have the benefit of its charitable donations. Therefore, we reject the argument that the assets of the FUND should be held in a resulting trust.