J-S06001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2032 EDA 2020 |

Appeal from the Order Entered October 13, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002109-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: T.A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2103 EDA 2020 |

Appeal from the Order Entered October 20, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000923-2015

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:              **FILED:  APRIL 29, 2021**

This is the third time this matter has been before this Court. In the

consolidated appeal now before us, T.H., the former pre-adoptive kinship

parent of T.A.H. ("Child"), appeals *pro se* from two orders by the Court of

Common Pleas of Philadelphia County. The first is the dependency court's

_____

[*] Retired Senior Judge assigned to the Superior Court.

October 13, 2020 order entered at CP-51-DP-0002109-2015. That order determined that Child was properly removed from T.H.'s care and placed with Child's maternal grandmother ("Grandmother"). The second order, entered by the adoption court on October 20, 2020, at CP-51-AP-0000923-2015, dismissed T.H.'s petition to adopt Child as moot. As we do not find that the dependency court abused its discretion in entering the October 13, 2020 order, we affirm that order sanctioning the removal of Child from T.H.'s care. However, we are constrained to vacate the adoption court's October 20, 2020 order dismissing T.H.'s adoption petition as moot, and remand for proceedings consistent with this Memorandum.

Child was born on July 27, 2015 and tested positive for marijuana. Two days later, the Philadelphia Department of Human Services ("DHS") obtained an order of protective custody for Child. DHS placed Child with her relative, T.H., the person Child's biological mother wanted to care for and adopt Child. On August 19, 2015, Child was adjudicated dependent. Both Child's biological mother and her biological father voluntarily relinquished their parental rights to Child. The placement goal for Child was adoption. Child remained in the care of T.H. until February 6, 2017, when she was removed from T.H.'s home because of safety concerns.

On July 18, 2017, Child was again placed with T.H., who was awarded temporary physical custody of Child under the supervision of DHS and the

Community Umbrella Agency ("CUA"). DHS retained legal custody of Child, and the placement goal for Child remained adoption.

In November of 2017, CUA visited T.H.'s home and found no food and minimal furniture and clothing for Child in the home. T.H. explained that she was trying to sell her home. CUA revisited T.H. later that same month, this time in her new apartment. CUA once again observed that there was minimal furnishings and little food in the apartment. Although Child was sleeping on a cot, T.H. informed CUA that a new bed for Child was on the way. In light of the fact that T.H. and Child had recently moved, CUA gave T.H. time to settle in and found T.H.'s home to be appropriate at that time.

On December 8, 2017, the foster care agency, Northeast Treatment Center ("NET"), visited T.H. and Child at their apartment. After that visit, NET alerted the CUA team and DHS that there was little food in the house, and that Child was still sleeping on a cot and appeared not to have a car seat. NET also found discrepancies in the information T.H. was providing and determined that it was not comfortable approving the family profile for adoption in light of all of the issues. Based on NET's report, CUA reached out to T.H. to schedule a visit, but T.H. had taken Child to Florida without CUA's knowledge. Upon their return, on December 22, 2017, CUA and DHS removed Child from T.H.'s home with the assistance of the police. Child was placed into a foster home.

On March 22, 2018, the dependency court held a scheduled judicial removal hearing and heard testimony from several witnesses, including the

CUA case manager, the DHS permanency worker and T.H. Following the hearing, the dependency court entered an order granting the judicial removal of Child from T.H.'s care retroactive to December 22, 2017. The court also determined that Child should not be returned to T.H.'s care and that T.H. did not have standing to contest DHS's decision to remove Child from her care. T.H. immediately filed a petition to adopt Child. Child was eventually placed in the temporary physical custody of Grandmother.

T.H. appealed the March 22, 2018 removal order of the dependency court. This Court reversed that order on the basis that the dependency court erred by failing to grant T.H. standing as a pre-adoptive parent to challenge DHS's decision to remove Child from her care. We remanded the matter with instructions for the dependency court to hold additional dependency proceedings on DHS's decision to remove Child from T.H.'s care in which T.H. was represented by counsel and allowed to fully participate. *See In re T.H.*, No. 1191 EDA 2018 (Pa. Super. December 20, 2018) (unpublished memorandum).

Nonetheless, on January 15, 2019, the dependency court conducted a permanency review hearing. However, there was no indication in the record that the court considered the propriety of DHS's decision to remove Child from T.H.'s care or conducted any new proceedings on that issue. Following the permanency review hearing, the court entered an order on that same day awarding unsubsidized permanent legal custody to Grandmother and

terminating court services and discharging DHS's dependency petition on the basis that Child was no longer dependent.

Later in the day on January 15, 2019, the adoption court held a hearing on T.H.'s petition to adopt Child. At the hearing, DHS argued that the adoption petition should be dismissed as moot. DHS reasoned that T.H. had filed the adoption petition against DHS and DHS no longer had custody of Child given that the dependency court had dismissed the dependency petition earlier that day. **See** N.T. Status Hearing, 1/15/19, at 3. Child's guardian *ad litem* agreed that the adoption petition should be dismissed. **See id.** at 4. The adoption court issued an order, also on January 15, 2019, dismissing the adoption petition as moot.

T.H. filed a *pro se* notice of appeal from each of the two January 15, 2019 orders. This Court vacated both orders because the dependency court had failed to follow our instructions to hold further proceedings, with T.H.'s full participation, to determine whether DHS had properly removed Child from T.H.'s care. **See In the Interest of T.A.H.**, 475 & 476 EDA 2019, (Pa. Super. August 29, 2019) (unpublished memorandum). We found that, in the absence of such a determination, neither the granting of the unsubsidized legal custody to Grandmother or the dismissal of the adoption petition as moot could stand. We explained:

> Without the dependency court's sanction of [Child's] removal [from T.H.], Child would not have been placed with Grandmother, and, if she were not with Grandmother, the courts could not have found her no longer to be a dependent child and could not have

- 5 -

granted Grandmother unsubsidized permanent legal custody of Child. Additionally, if legal custody of Child were not awarded to Grandmother, DHS would still have legal custody of Child, and [T.H.]'s petition for adoption naming DHS as Child's current legal custodian would be appropriate, meaning that [T.H.]'s adoption petition should not have been denied as moot. For these reasons, we are compelled to vacate both orders dated January 15, 2019, *in their entirety.*

*Id.* at 13 (citation omitted) (emphasis added). We remanded for the dependency court to hold a new hearing with the following instructions:

[A]t this hearing, [T.H.] must be permitted to participate fully and to have counsel present, as this Court previously instructed the dependency court to do in *T.H.*, No. 1191 EDA 2018, unpublished memorandum at 1, 6-8. After this hearing, if the dependency court concludes that Child's removal was improper, [T.H.]'s petition to adopt Child may proceed. Only if the dependency court determines at the hearing on Child's removal that said removal was proper, then the dependency court may proceed to the issues it considered at the hearing on January 15, 2019, including: whether termination of court supervision is proper; whether DHS services should thus be ended; whether the dependency petition should be discharged; and whether Grandmother should be granted unsubsidized permanent legal custody of Child. Also, if the dependency court finds that removal was proper, [T.H.]'s petition to adopt may again be declared moot by the adoption court.

We note that notwithstanding our vacatur of the dependency court's and the adoption court's orders dated January 15, 2019, we leave undisturbed the dependency court's earlier orders finding Child dependent and establishing Child's current placement with Grandmother; it is in Child's best interest to maintain *status quo* while the dependency court acts on remand.

*In the Interest of T.A.H.*, 475 & 476 EDA 2019*,* at 16-17.

Following the issuance of this Memorandum, the dependency court entered an order on September 24, 2019, re-adjudicating Child dependent, vacating Grandmother's permanent legal custody and transferring legal

- 6 -

custody to DHS and granting temporary physical custody to Grandmother. The dependency court also recused itself and the matter was reassigned to another court to conduct the remand hearing ordered by this Court.

On remand, the reassigned dependency court held two evidentiary hearings on the issue of whether Child had properly been removed from T.H.'s care. T.H. elected to proceed *pro se* at the hearings, though the court appointed back-up counsel. The first hearing was held on January 16, 2020, in which the CUA case manager and the director of foster care permanency at NET testified. The matter was continued for a second hearing on March 19, 2020. Due to the COVID pandemic, the second hearing was rescheduled and eventually held virtually on August 5, 2020. At that hearing, several witnesses, including DHS caseworkers who had been involved with the case, testified. Additionally, T.H. "was entitled to and did participate fully in [both] judicial removal hearings … by providing evidence on her behalf and cross-examining witnesses." **See** Trial Court Opinion, 12/8/20, at 27.

After the hearing on August 5, 2020, the dependency court issued a permanency review order stating that the current placement goal for Child was adoption and temporary physical and legal custody of Child was to remain

with Grandmother.[1] The court reserved its decision on the removal petition. *See* Permanency Review Order, 8/5/20, at 1-2.

On October 13, 2020, the dependency court issued an order ruling on the removal. It found that DHS had properly removed Child from T.H.'s care and that the subsequent placement with Grandmother was in the best interests of Child. The court stated in its order that:

> DHS presented numerous witnesses who reiterated and supported the facts, circumstances and decisions which resulted from the Child's removal from the home of [T.H.].
>
> None of the witnesses' testimony [was] discredited or materially challenged. The witnesses were knowledgeable, credible and deserving [that] great weight be accorded to their testimony as to the facts and circumstances resulting in the Child's removal. …
>
> [T.H.] offered no evidence to materially [contradict] or impeach the witnesses' testimony.

Trial Court Order, 10/13/20, at 4-5.

The dependency court then referred the matter to the adoption court to review the adoption petition filed by T.H. On October 20, 2020, the adoption court once again entered an order declaring the adoption petition to be moot. The court explained that the petition was moot because the dependency court, by determining that the removal of Child had been proper, left "the decision

---

[1] Although the court's order stated that legal custody was to remain with Grandmother, Grandmother, per the September 24, 2019 order, only had physical, and not legal, custody of Child. This was confirmed at the August 5, 2020 hearing, where the DHS caseworker testified that Child was residing with Grandmother in a temporary physical custody arrangement. *See* N.T. Hearing, 8/5/20, at 8.

to grant [Grandmother] unsubsidized permanent legal custody [ ] undisturbed" and therefore "DHS no longer had custody of Child." Trial Court Opinion, 12/1/2020, at 4-5.

T.H. filed a timely *pro se* notice of appeal from the October 13, 2020 dependency court order as well as from the October 20, 2020 adoption court order. This Court consolidated the matters *sua sponte*, and both of T.H.'s appeals are now before the Court. In challenging the October 13, 2020 dependency court order, T.H. raises the following issues:

1. Did the Judge err in law by failing to consider if there was clear and convincing evidence that the child was abused, neglected or at risk for bodily harm by the appellant and if DHS made reasonable efforts to prevent the removal on December 22, 2017 as required by law?

2. Did the Judge err in law by failing to assess if the safety allegations and removal of the child was retaliatory after the appellant was awarded custody of the child on July 18, 2017 and DHS was court ordered to finalize the adoption?

3. Did the Judge commit an egregious legal error by failing to remain fair and impartial, violating the appellant[']s due process rights to present a proper defense and her constitutional right to be free from unwarranted seizures when there was no exigency that child TH was at risk for bodily harm?

4. Did the Judge err in law by concluding that the removal was in the best interest of the child and fail to assess the bond between the child and the appellant or the psychological trauma the child may face from not being returned to [the appellant]?

5. Did the lower court err in law by failing to assess if DHS committed fraud on the court by withholding court dates and never serving the appellant on discovery requests in [an] unconscionable scheme to deceive the court, commit perjury and submit false safety complaints to cover up the removal of a child from [the appellant] where the appellant had custody and the

birth parents voluntarily terminated their rights for this family placed adoption?

Appellant's Brief at 4-5; Notice of Appeal, 2032 EDA 2020, at 1.

Meanwhile, in challenging the October 20, 2020 adoption court order,

T.H. raises the following three issues:

1. Did the lower court err by stating the petition is moot when the adoption petition was not paid for or initiated by DHS and the appellant received consents from the biological parents and the maternal grandmother who has legal custody of the child?

2. Did the lower court err in law by not discharging DHS from the petition when they no longer had legal custody of the child or the legal right to contest the adoption?

3. Did the lower court err by failing to assess if the family placed adoption was in the child's best interest?

Appellant's Brief at 5 (questions renumbered to correlate with Notice of Appeal); Notice of Appeal, 2103 EDA 2020, at 1.

In reviewing dependency cases, this Court must accept the findings of fact and the credibility determinations of the lower court if they are supported by the record. *See In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). We are not, however, required to accept the lower court's inferences or conclusions of law. *See id.* As such, we review for an abuse of discretion. *See id.* An abuse of discretion will only be found upon the demonstration of manifest unreasonableness, partiality, prejudice, bias or ill-will. *See In re C.M.C.*, 140 A.3d 699, 704 (Pa. Super. 2016).

In her first issue, T.H. argues, in essence, that the dependency court abused its discretion in determining that Child was properly removed from her custody in December of 2017. This claim fails.

In making her claim, T.H. mistakenly states that the standard to be applied here is one of clear necessity and she seems to mold her less-than-clear argument around that misbelief. However, as DHS points out, the correct standard for reviewing whether Child was properly removed from T.H.'s care as a pre-adoptive foster parent is whether that removal was in the best interests of Child in that it was best suited for Child's safety, protection and physical, mental and moral welfare. **See** 42 Pa.C.S.A. § 6351 (providing options for disposition of a dependent child's case in a way that is "best suited for the safety, protection and physical, mental and moral welfare of the child"); **In re Griffin**, 690 A.2d 1192, 1213, 1215, 1216 (Pa. Super. 1997) (holding that the removal of dependent children from the custody of their pre-adoptive parents was proper as such removal was in the best interests of the children).

Here, the dependency court found that at the January 16, 2020 and August 5, 2020 hearings it heard "credible, persuasive, and clear and convincing evidence from various witnesses that the removal of Child from [T.H.]'s care was the disposition best suited for [Child's] protection and physical, mental and moral welfare." Trial Court Opinion, 12/8/20, at 27. The court then comprehensively detailed that evidence over the course of nine

pages in its opinion supporting its order determining that the removal of Child had been proper. ***See id***. at 17-26.

To that end, the court first recounted the testimony of Miriam Colon, the CUA case manager, at the hearing on January 16, 2020. Colon testified that during her visit to T.H.'s home in November of 2017, she noticed that Child was sleeping on a cot and did not have any other bedroom furniture. ***See*** N.T. Hearing, 1/16/20, at 16. She stated that Child had little clothing and there was minimal food in the refrigerator. ***See id.*** at 16, 77. However, she agreed to give T.H. time to settle in because she had recently moved. ***See id.*** at 16.

Colon recounted that she received an email from Catarina Gallelli, the foster care permanency director at NET who was responsible for completing the family profile, expressing her concerns that stemmed from a visit to T.H.'s apartment on December 8, 2017. The email raised concerns, among other things, about the amount of food and clothing for Child in the apartment, whether Child had a car seat, and who was caring for Child while T.H. was at work. ***See id.*** at 22, 65-66.

Colon testified that the CUA team and DHS consulted on the matter and contacted the City Solicitor office for guidance. ***See id***. at 22-24. According to Colon, DHS made the decision to remove Child from T.H.'s home. ***See id.*** at 25. She went to T.H.'s apartment on December 22, 2017, with the DHS permanency worker, Kenneth Dixon. At that time, Colon testified that there was still minimal food in the apartment and no foods typically seen for a two-

year-old child. *See id.* at 26, 27, 86. Child was still sleeping on a cot, which Colon testified had an ill-fitted mattress and stained sheets. *See id.* at 27, 87. Child still only had a minimal amount of clothing. *See id.* at 26. Colon further stated that Child's hair was matted, her shirt and socks were dirty and she smelled of urine. *See id.* at 30-31. Colon and Dixon removed Child with the assistance of the police.

The dependency court then summarized the testimony of Gallelli, the NET family profile writer, who discussed her visit to T.H.'s home on December 8, 2017 in more detail. She testified that Child was still sleeping on what she described as a toy-like cot, which was not allowed under state regulations. *See id.* at 107-108. She further stated that there was minimal food in the refrigerator, and that T.H. gave differing accounts of whether and when she eats out and who pays for that. *See id.* at 110-112.

Gallelli also testified that she had concerns about T.H.'s finances and business matters and whether T.H. had a car seat for Child. *See id.* at 112-113, 115. Moreover, Gallelli testified that T.H. stated that her sister would come and pick up Child and use one of her car seats. However, T.H.'s sister had not followed through on the process to certify as a respite caregiver and Child was therefore not permitted to go to her home for care. *See id.* at 117. Gallelli was also concerned about T.H.'s credibility, as she gave contradictory information. *See id.* at 119. Based on all of these issues, Gallelli explained that she was not comfortable approving the family profile for adoption and did

not believe Child's placement with T.H. to be in Child's best interests. *See id.* at 118, 120.

The dependency court then noted that it held a second hearing on August 5, 2020. At that hearing, several DHS workers testified, including Dixon. Dixon testified that he assisted with the removal of Child from T.H.'s home and that the removal had been based on concerns regarding housing, food, bedding, clothing and a car seat. *See* N.T. Hearing, 8/5/20, at 28, 29. Tiffany Vann, a permanency stability specialist from NET, also testified. She recounted how she had visited T.H.'s home in November and December of 2017 with Gallelli and reiterated that T.H.'s apartment had minimal furnishings, clothing for Child, and food at that time. *See id.* at 43, 45.

The dependency court concluded that the testimony from these witnesses, which it specifically found to be credible, provided clear and convincing evidence that Child's removal from T.H.'s care had been in the best interests of Child's physical, mental and moral welfare. Moreover, the trial court found that T.H. had not offered any credible evidence to materially contradict these witnesses' testimony. T.H., in effect, asks us to override the court's credibility determinations by alleging her belief that these witnesses committed perjury and provided false documentation. *See* Appellant's Brief at 48-49. However, it is the dependency court's prerogative as fact-finder to believe all, part or none of the evidence and to make all credibility determinations. *See Interest of T.G*., 208 A.3d 487, 490 (Pa. Super. 2019).

We have carefully reviewed the record and find that it supports the dependency court's findings of fact and credibility determinations. We cannot say that the court abused its discretion in determining that the evidence presented at the January 12, 2020 and August 5, 2020 hearings provided clear and convincing evidence that T.H.'s home was not appropriate for Child and her removal from that home was therefore best suited for her protection and welfare. *See In re C.M.C.*, 140 A.3d at 704.

We recognize that T.H. raises several other claims challenging the dependency court's order finding Child's removal proper. Specifically, T.H. appears to contend that the dependency court also erred by failing to: (1) assess whether the removal of Child from her home was retaliatory; (2) remain fair and impartial; (3) consider the bond between her and Child; and (4) determine whether DHS committed fraud on the court. *See* Appellant's Brief at 15-40. T.H.'s assertions in support of these claims, however, are disjointed, fail to cite to pertinent caselaw, quote notes of testimony without adequately explaining how that testimony entitles her to any relief, and are otherwise presented in a manner which precludes meaningful appellate review. We therefore agree with DHS that all of these claims are waived. *See* Pa.R.A.P. 2119 (a) (providing that each question raised by the appellant must be supported by pertinent discussion and citation to authorities). As DHS explained:

> Concerning the claim of retaliatory removal, [T.H] fails to cite to pertinent law to support this claim; this claim therefore … [is]

waived. [*See*] Pa.R.A.P. 2119. Concerning her claim that the trial court failed to remain impartial, this argument also is waived because it merely quotes excerpts of testimony but does not explain or cite legal authority as to how these excerpts show impartiality on the part of the trial court. *See Hercules v. Jones*, 609 A.2d 837, 840 (Pa. Super. 1991) (holding that argument is waived where appellant fails to link law to facts of case). Concerning the claim that that the trial court failed to consider the bond between Child and [T.H.], [T.H.] fails to cite to pertinent legal authority, instead citing to caselaw regarding the requirement that the court consider the parent/child bond in determining whether parental rights should be involuntarily terminated under Section 2511 of the Adoption Act. Accordingly, this argument too is waived. [*See*] Pa.R.A.P. 2119. [T.H.]'s claim that the trial court failed to assess whether DHS perpetrated a fraud upon the court likewise is waived for [T.H.] never raised this issue in the trial court, as demonstrated by her failure to point to where in the record this issue was raised. *See Commonwealth v. Nellom*, 234 A.3d 695, 703 (Pa. Super. 2020) (finding waiver where appellant failed to identify where in record an issue was preserved) (citing Pa.R.A.P. 2117(c) and Pa.R.A.P. 2119(e)).

DHS Brief at 19-20, n.3.

We therefore conclude that these assertions of error on the part of the dependency court are waived. As such, given our conclusion above that the dependency court did not commit an abuse of its discretion in sanctioning the removal of Child from T.H.'s care, we affirm the dependency court's October 13, 2020 order finding that Child was properly removed from T.H.'s care.

We cannot, however, reach the same conclusion as it relates to the adoption court's October 20, 2020 order dismissing T.H.'s adoption petition as moot. T.H. argues that the adoption court improperly dismissed her petition as moot, and, for the following reasons, we are constrained to agree.

In support of its order, the adoption court first noted that a matter is moot if there is no real legal controversy that concretely affects another. **See In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002). Applying that principle here, the court then stated:

> Here, there does not exist a real legal controversy that affects another in a concrete manner. [T.H.] filed the petition against DHS. However, DHS is no longer affected by the controversy in question, as both the dependency petition was discharged, and Maternal Grandmother was granted unsubsidized permanent legal custody. (See Trial Ct. Order 1/15/19; Trial Ct. Order 10/8/2020). As DHS is no longer the legal custodian of Child, [T.H.] would need to file the petition for adoption against the proper legal custodian, Maternal Grandmother.

Trial Court Opinion, 12/1/2020, at 6.

The problem with this reasoning is rooted in the fact that the complicated procedural history of this case and the dependency court's resolution of the removal issue left it unclear just who had legal custody of Child when the dependency court issued its October 13, 2020 order.

We know that this Court explicitly vacated the dependency court's January 15, 2019 order in its entirety, which is the order that discharged the dependency petition and transferred unsubsidized permanent legal custody of Child to Grandmother. The dependency court then re-adjudicated Child dependent, vacated Grandmother's permanent legal custody of Child, and transferred legal custody to DHS.

The matter was reassigned to another dependency court, which then held the evidentiary hearings regarding the propriety of Child's removal from

T.H. Following those hearings, the court issued an order finding that the removal and "subsequent placement" with Grandmother was in Child's best interest. It did not, however, explicitly find that Child was no longer dependent or transfer legal custody from DHS back to Grandmother.

The guardian *ad litem* recognizes this omission in its brief. **See** Consolidated Brief of Appellee T.H. at 15 (acknowledging that "DHS still has legal custody of [Child] and there will need to be an order granting [permanent legal custody] to [Grandmother]").[2] Grandmother also states in her brief that she never received an order once again granting her legal custody of Child, which has led to difficulties in obtaining medical care for Child and enrolling her in school. **See** Brief of Maternal Grandmother C.M. at 2, 6, 17-18.

Based on all of the above, we cannot agree with the adoption court that T.H.'s adoption petition is moot on the basis that the dependency petition has been discharged and DHS no longer has legal custody of Child. The record simply does not have a clear and current order to that effect. We therefore are once again constrained to remand this matter to the dependency court. On remand, the dependency court must determine if an order discharging the

_____

[2] Nonetheless, the guardian *ad litem* argues that this Court should still conclude that the adoption petition was properly discharged. According to the guardian *ad litem*, the dependency court determined that Child was properly removed from T.H. and the evidence supporting that determination also supports a finding that T.H.'s petition to adopt Child, who was removed from her care, should be discharged. However, the guardian *ad litem*'s argument in this regard goes to the merits of the adoption petition, and not to whether the petition was moot at the outset.

dependency petition and granting unsubsidized permanent legal custody to Grandmother is still in the best interests of Child and if so, then the court shall enter an order to that effect. *See* 42 Pa. C.S.A. § 6351(g) (directing that the dependency "court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child"). If such an order is entered, then the adoption court can dismiss T.H.'s adoption petition as moot and T.H. will have to file an adoption petition against Grandmother as Child's legal custodian.

Dependency court's October 13, 2020 order affirmed. Adoption court's October 20, 2020 order is vacated, and matter remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/21